106      155
30 SC 181

# Grove *versus* Barclay.

1. An implied contract for use and occupation of real estate may arise from the use of premises by the occupant with the sufferance of the owner; and this implication is not affected by the refusal of the occupant to quit, after notice from the owner, unless the latter has followed up the notice by some act indicative of an intent to treat the occupant as a trespasser.

2. In like manner an implied contract to pay for storage will arise where one person leaves his goods upon the property of another. A mere notice by the owner to remove the goods, not complied with, will not prevent the owner from electing to permit the goods to remain, instead of removing them himself, and from bringing suit to recover for storage.

3. B. left his goods (heavy machinery, etc.) upon the property of A., and refused to remove them, after notice, threatening to hold A. liable in damages if he removed them himself. A. did not remove the goods, but several years afterwards brought assumpsit against B., claiming to recover (1) for use and occupation, (2) for storage, (3) damages for refusing to remove the goods, thereby encumbering and obstructing plaintiff's use of his property. Upon the trial plaintiff asked leave to file an amended narr., declaring in tort, for wrongful refusal to remove the goods, which the court refused to permit. The court directed a verdict for the defendant. *Held*,

    (1.) That the facts should have been submitted to the jury, and if believed, the plaintiff was entitled to a verdict.

    (2.) That it being immaterial whether such verdict was rendered upon a count in assumpsit or in case, the court should have permitted the plaintiff, in order to provide for such alternative, to file, upon the trial, his proposed amended narr. in tort.

    (3.) That the plaintiff's right of action was not affected by his notice to defendant to remove the goods, as, the notice having been disregarded, the occupancy by defendant of plaintiff's premises continued, after the notice, precisely as theretofore.

March 28, 1884. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY and GREEN, JJ. STERRETT and CLARK, JJ., absent.

ERROR to the Court of Common Pleas, No. 4, of *Philadelphia county:* Of January Term, 1884, No. 89.

This was an action of assumpsit by Henry S. Grove et al., heirs and legal representatives of Conrad S. Grove, deceased, against A. Charles Barclay and John K. Barclay, to recover for use and occupation; for storage room, and for damages suffered by plaintiffs from the defendants' refusal to remove certain machinery from, and allowing it to remain on and encumber plaintiffs' property for a period of more than ten years, beginning in 1873. The name of A. Charles Barclay was afterwards struck out, leaving John K. Barclay the sole

defendant. Pleas, non·assumpsit,.payment, with leave, etc., set-off, and the statute of limitations.

The plaintiffs had previously filed a bill in equity, praying equitable relief, upon the same state of facts alleged in this action, which bill was dismissed for want of equitable jurisdiction : see Barclay's Appeal, 12 Norris, 50.

Upon the trial, before THAYER, P. J., after the evidence was closed and the judge had charged the jury, the plaintiffs asked leave to file an amended narr. in tort, claiming damages for the defendants' wrongful refusal to remove his goods from plaintiffs' premises. Objected to; objection sustained; exception.. (Fifth assignment of error.)

The other assignments of error were to the charge of the court. The facts, as they appeared from the evidence, are stated in the charge, which was as follows :

This action is brought by the heirs at law of Conrad S. Grove, who is now deceased, against Mr. John K. Barclay, to recover damages for the failure to remove certain machinery from the premises No. 129 North Water street, in Philadelphia. It seems that these premises, together with the adjoining premises, 127, were originally owned by Mr. Andrew Barclay, the father of Mr. John K. Barclay and Mr. A. Charles Barclay, and that he conveyed these two houses respectively to his two sons. One hundred and twenty-nine, the house in which this machinery is situated, was conveyed to A. Charles Barclay. That conveyance was made by Mr. Andrew Barclay on the 1st of April, 1863. Mr. Boyer had been in partnership with these brothers in the business of manufacturing linseed oil on the premises. Mr. Boyer subsequently went out of the firm, and the two brothers remained alone and carried on the business. The machinery seems to have been the joint property of the two brothers. A bill of sale has been put in evidence on the part of the plaintiffs from the father, Mr. Andrew Barclay, to the two brothers, Charles Barclay and John K. Barclay, for the machinery. That instrument shows joint ownership in the machinery on the part of the two brothers. Some dispute seems to have arisen between the two brothers in regard to this machinery subsequently, the details and character of which are not in evidence. . . . . . While this was going on, Mr. A. Charles Barclay, the owner of the house in which the machinery was, who had become the owner by the deed from his father, conveyed the premises to Mr. Conrad S. Grove, now deceased. This conveyance from Charles Barclay to Grove was made on the 20th of June, 1873, and the consideration for the conveyance seems to have been, according to the conveyance, $19,000. That is, $6,000 of money, subject to a mortgage of $13,000,

[Grove *v.* Barclay.]

which was upon the premises, and the payment of which was assumed by Mr. Grove. After the conveyance the machinery continued upon the premises of Mr. Grove.

The good faith of the conveyance from Charles Barclay to Mr. Grove has been attacked, and it is said that he knew the machinery was there when he bought the house; that he had been a partisan of Charles before in the litigation which had taken place between him and his brother, and a witness for him, and it seems to be sought to be inferred that those circumstances give rise to a suspicion that he was not a *bona fide* purchaser, or indeed a purchaser at all, but that he was a mere cover for Charles Barclay. Well, it would be very dangerous, upon such slight evidence as that, gentlemen, to assume that he was not a *bona fide* purchaser, because, after all, it amounts only to a suspicion; the mere fact that he had been a witness for Charles Barclay, and that even he had identified himself as a partisan of his. If he did so—for I do not know how the fact is—it would not be sufficient to prove that a conveyance from Charles Barclay to him was a fraudulent conveyance. It seems to me, therefore, that, in the lack of any evidence to show to the contrary, you ought to assume that the conveyance of Charles Barclay to Conrad S. Grove was a *bona fide* conveyance, and that Mr. Grove became the lawful owner of the property by virtue of that transfer.

The property remained upon the premises after Mr. Grove bought it. It was very large and heavy machinery, used in the manufacture of linseed oil. Mr. Grove, it seems, was desirous of getting rid of the machinery, because it incumbered his building.

About six months after acquiring the title to the house, 129 Water street, he wrote a note, dated December 17, 1873, which has been given in evidence, addressed to the two brothers Barclay, in which he gave them notice that he claimed storage for machinery during the time which it had remained upon his premises after he had acquired the title up to the date of the note, and gave them notice to remove it, and further notice that if they did not remove it he would sell it, with notice that the purchasers should remove it at their expense within a certain time. This note was sent about six months after he acquired his title. It was dated in December, and he acquired his title in June.

An answer was sent to that note by Mr. West, who was the counsel acting for one of the Barclays, Mr. John K. Barclay, the present defendant. He does not seem to have represented the other brother. Acting for Mr. John K. Barclay, he sent a reply to that, in which, in effect, it seems to me, he sets up some kind of a claim, though it does not distinctly appear

[Grove *v.* Barclay.]

exactly what—from the note alone, to have this machinery remain upon the premises. He reminds Mr. Grove that he must have bought the property with the knowledge of certain complications which existed with regard to it. What those complications were are not set out in the note. In effect, he refuses to remove the machinery—that is, I think the fair inference from the note—and suggests, it seems to me, a right to have it remain there, giving him notice that if he, Mr. Grove, removes it, he will hold him responsible for any damage which may be incurred in consequence thereof.

The effect of that reply from Mr. Grove seems to have been to have deterred him from carrying out the intentions declared in his note of the 17th of December, 1873, to the Barclays, for in that note, you will recollect, he gave notice that he would sell the property, and that it would be removed by the purchaser at the Barclays' expense. The effect of this reply seems to have deterred him from carrying out that part of his declared intention, and the result was that the machinery continued to remain upon the premises through all these years, from 1873 down to 1883—ten years. During that period Mr. Grove having died, the plaintiffs, being his heirs, claim compensation from Mr. Barclay in the way of damages for not removing this machinery, and their testimony shows a damage of $1,500 a year, which for ten years is $15,600. That may be said in round numbers, I suppose, to be the claim set up by the plaintiff. This claim is presented by the plaintiff in the pleadings which are filed in two aspects: First, as a claim for use and occupation of the premises, which can only be founded upon the relation of landlord and tenant existing between the parties, and, secondly, a claim for storage. The claim is presented in two alternative aspects. [Of course, both of these aspects cannot be maintained at the same time, because, if he was a tenant, and liable for use and occupation, he could not be charged for storage; and, on the contrary, if he was chargeable with storage, he could not be charged for use and occupation. But the plaintiffs, as they had a right to do, have presented their claim, as I say, in these two alternative aspects. One of those views must be maintained by the evidence, in order to enable the plaintiff to recover at all, because he can only recover upon the claim which he has presented in his declaration.]

First, with regard to the claim for use and occupation. A claim for use and occupation is founded upon an implied contract of tenancy. No man can be sued for use and occupation, except where the relation of landlord and tenant exists between the parties. It is a claim which is made against a man, where he occupies as a tenant. Ordinarily this form of

[Grove v. Barclay.]

action is resorted to where there has been no express contract for a lease, but where the defendant has occupied permissively the premises for which the rent is claimed in the action. Where without any express contract between the parties one man has occupied the land of another, the other has tacitly permitted him to assume the relation of a tenant; has permitted the occupation, and so given rise to the implied contract between the landlord and tenant.

It is true also that a man may recover for use and occupation, where there has been an express contract of tenancy. In this case there is, of course, no express contract for any such tenancy. There is no evidence of any contract for a lease between Conrad S. Grove and Mr. Barclay. There never was any negotiation for a lease, and there is no evidence whatever of any express contract.

Was there any occupation of the premises by Mr. John K. Barclay: such an occupation, I mean, as characterizes the relation of landlord and tenant; arising out of his failure to remove the machinery from the plaintiff's building? If a man takes possession of another man's land and uses it, and the owner permits that use, he may claim for use and occupation. He may elect either to treat him as a trespasser and to dispossess him, or he may elect to treat him as a tenant, and sue him upon an implied promise to pay the fair value of the premises. [But the relation of landlord and tenant must exist in order to enable the party to maintain the action for use and occupation. The defendant must have had the dominion and control of the premises. It is not sufficient that he may have had some property stored in a part of the premises, for which he may be chargeable for storage, or for warehousing, or something of that kind, but he must have had the absolute dominion and control. He must have been, in other words, the tenant, the tenancy arising out of the occupation upon the implied promise between the parties.]

Now, had Mr. Barclay that kind of dominion and control over this house, 129 North Water Street, which characterizes the occupation of a tenant? Is his occupation, under the circumstances, consistent with the implication of a promise to pay rent as rent, leaving out of the question entirely now the claim for storage, and only considering it in its aspects as a claim for use and occupation? [Did either of these parties regard the other as parties to an implied understanding for the payment of the rent? Did Mr. Grove regard Mr. Barclay as his tenant for these premises, or did he only regard him in the light of a person who had property there who refused to remove it; and did Mr. Grove himself retain the control of the premises? If Mr. Grove retained control of the premises himself, then Mr.

Barclay cannot be regarded as a tenant; and if not regarded as a tenant, he cannot be sued for use and occupation; for it is necessary that that relation should exist, at least by implication, in order to enable the plaintiff to maintain that action. The correspondence would seem to show—at least, it seems to me to show—that Mr. Grove himself was in possession of the property, because he claims in his letter that the Messrs. Barclay are keeping certain property upon his premises without his permission, and he claims damages for that unlawful act, and calls upon them to remove the property from his premises. If he were a tenant, it seems to me he would have called upon him for the payment of rent as rent, and recognized his rights there as a tenant by his consent. He writes, it seems to me, as a person in the possession of his own property, which he finds, however, incumbered by the property of another man whom he calls upon to remove that property. Is that consistent with the view that the defendant was his tenant? If he was not a tenant, at least by an implied understanding with the parties, then as I said before, the action for use and occupation cannot be maintained.]

. . . . . In order apparently to avoid any question, however, which might arise from this difficulty of the alleged implied tenancy which is the basis for the action for use and occupation, the plaintiffs have combined with that claim the claim for storage, during all these years, of the defendant's machinery. As I said in the beginning, they have presented the case in an alternative form, so that if it should be determined that the defendant was not a tenant and was not responsible for any claim for use and occupation they might at any rate hold him for storage, and that brings me to consider the second branch of the plaintiffs' case, which is founded upon the claim for storage. There never was any express contract for storage here, as is admitted by those parties. The property was upon the premises under the circumstances which I have already referred to. It belonged to the two brothers. It was there when Mr. Grove bought 129 North Water Street, and it remained there, not by any agreement of the parties, but through the failure of the owners of the machinery to take it away. There never was any express contract to pay storage, and the question arises, therefore, whether there was any implied contract to pay storage. [If a man will leave property in a warehouse or place adapted for such purposes at the cost of the owner, and take up the room which he might otherwise use himself, when he knows that he ought to remove the property out of the building, the law will raise an implied contract on the part of the owner of the goods to pay for the privilege of their

[Grove v. Barclay.]

storage. The owner of the premises may treat him as under an implied contract to pay for the storage of property. But that implication can only arise where it is consistent with all the circumstances and facts of the case. If the owner of the property elects to treat the owner of the personalty as a trespasser, a wrongdoer, and gives him notice to remove his property or that he will remove it for him at his cost, that is inconsistent with the idea of a continuing contract between the parties for storage, because if he assumes that position and tells him to remove his property, or that he will remove it for him, it is totally inconsistent with the idea that the parties had entered into a contract either express or implied, that he would pay for the storage. In such circumstances he ought to put the property out after a sufficient notice to the owner. Up to the time when Mr. Grove assumed that position, I think he was undoubtedly entitled to look upon the Messrs. Barclay as responsible upon an implied contract that they would pay for the space which their goods were occupying in his house. He was entitled to regard it as a contract for storage at any rate during that six months, because they knew that their property was there; that it was incumbering his premises; that it was their duty to remove it; and that they might justly be called upon to pay storage if they allowed it to continue to remain there.

[But can you suppose any contract for storage to have continued to exist after the correspondence of December, 1873? Is it possible to reconcile the attitude of the parties after that correspondence with the position of contractors to a contract of storage? Mr. Grove gave them notice then that he should claim storage up to that time. He says, "I claim to be paid a reasonable amount for the storage of the said machinery during the time I have been the owner of the property." That is, "From the time I have been the owner of the property up to the time when I now write you this letter, I claim that you shall pay me storage." He does not, however, go on to say, "I shall claim storage for the future during any time that you may leave it there," but he says, "I notify you to take that property away, and I give you notice that if you do not take it away, I will sell it and I will have it removed at your expense." Well, when Mr. Grove took this hostile attitude, and declared that the property should not remain upon the premises—that he would sell it and have it removed by the purchaser—it seems to me he placed himself then in a position which is inconsistent with any idea of a continuing contract for storage after that date. It was virtually saying to the Messrs. Barclay, it seems to me gentlemen, "You are trespassing now, and I shall remove the property, which is trespassing upon my

10 OUTERBRIDGE.—11.

premises, at your expense; I will sell it, and I shall require the purchaser to remove it at your expense." I do not see how the idea of an implied contract to pay storage can exist after that correspondence. It seems to me that the attitude of the parties was then totally changed, and that Mr. Grove might, as has been suggested, after that notice have taken that property out; that he would have been justified in doing so; and if the defendant refused to designate any place in which it could be put, he might have had it hauled to any fit place that he saw proper, after notice to the defendant, without being liable for damages for so doing.

[Does his neglect to do that, and his omission to assert his rights in the manner which was the natural, and it seems to me, the legitimate manner to assert his rights after the letter of December, 1873—does his neglect to do that authorize him to treat the contract of storage as a continuing contract and set up a claim now for ten years of storage, amounting to $15,000? It does not appear to me, gentlemen, that it does. While, therefore, I think it would be competent for him to maintain his action for the six months' storage up to the 17th of December, 1873, it seems to me that his claim came to an end at that date, and that, having then taken a position which was totally incompatible with that of a contract relation, either express or implied, he could only assert his rights subsequently either by an actual removal of the property from the premises or by suing the defendant for not removing the property, in an action founded *in tort.* I suppose he might have had that remedy as well as the remedy by removal. But it does not seem to me that any contract relation about the storage could exist after the correspondence of December, 1873. Whether it existed before is a question for you. It seems to me that it is a fair inference, from all the facts, that it did exist before; that is, that the circumstances justly gave rise to an implied promise to pay storage up to that time, because the owners of this property could not fairly expect that Mr. Grove should allow that property, which took up a large portion of the building and rendered it to a certain extent of little value, they could not fairly expect that property to remain upon Mr. Grove's premises without paying him for the privilege, and that being the condition of the parties, I think that a fair implication of a promise arose for him to pay and to pay for the use as storage during that period, but it seems to me that the relations of the parties were essentially altered by this correspondence of 1873, when they were given distinctly to understand that that property was not there then any longer by any contract, express or implied; that the defendants were trespassers; and that the plaintiff was going

[Grove v. Barclay.]

to remove it and sell it at their expense. I do not see how the idea of an implied contract for storage is consistent with the relative position of the parties after that date. I cannot see that. It seems to me, then, both parties were at arm's length. They had assumed a hostile attitude. Mr. Grove was declaring: "You are trespassers in keeping this property upon my premises, and I will remove it." He might have removed it; it was his duty to do so. That was his remedy, or he might then perhaps have sued the defendants in an action for *tort*, an action founded upon neglect in not removing. I do not see, however, how he could maintain the action upon a contract to pay storage after the correspondence of 1873.]

After the charge, the counsel for the plaintiff said that under it there was nothing to go to the jury, whereupon the Court said to the jury: "You will, of course, understand, gentlemen, that I have practically decided this case upon grounds of law, and have virtually taken it from you."

Verdict for the defendant and judgment thereon. The plaintiffs took this writ of error, assigning for error the refusal of the court to allow them to file, on the trial, an amended narr. in tort, and those portions of the foregoing charge inclosed in brackets.

*John G. Johnson* and *George W. Thorn*, for the plaintiffs in error.

*J. Howard Gendell* and *George Junkin*, for the defendant in error.

Mr. Justice GORDON delivered the opinion of the court, May 19, 1884.

This case, though apparently complex, involves a very simple proposition. The defendant, John K. Barclay, for some ten years before the bringing of the present action, occupied in whole or in part, the premises of the plaintiffs for his own use and purposes, and the question now is whether he can be made to pay for them. The court below thought not; we are of a different opinion. In the outstart we may observe, that the case of Barclay's Appeal, 12 Norris, 50, has no application to the matter in hand; nothing was there determined but that Grove's remedy, whatever it might be, was not in equity. As to the case in hand, if the facts as stated in the charge of the learned Judge, who directed the trial below, are to be taken as proved, the plaintiffs ought to have had a verdict had those facts been properly submitted, nor would it matter whether such verdict was rendered upon a count in assumpsit or in case, and in order to provide for an alternative of this kind the amendment proposed by the plaintiffs ought to have been

[Grove *v.* Barclay.]

allowed : McClosky *v.* Miller, 22 P. F. S., 151. The facts were for the jury, and they might have found for the plaintiffs on either of the three following grounds; for the use and occupation of the premises; on an implied contract for storage, or for an obstruction of the plaintiffs' use of the property by an unwarrantable persistence by the defendant in the possession of it without right. An implied contract for use and occupation may arise from the use of the premises by the tenant. and the sufferance of the landlord, nor does the fact that the tenant holds over after notice to quit tend to destroy this implication, unless the landlord has followed up the notice by some act indicative of an intent to treat him as a trespasser : National Oil Refining Co. *v.* Bush, 7 Norris, 335 ; and see also opinion of Judge BREWSTER, affirmed in Stockton's Appeal, 14 P. F. S., 58. On the question of an implied contract for storage, the court below admitted that such contract might fairly be implied as to the occupancy prior to the correspondence of December, 1873, but not after that time. But we cannot see how the actual status of the parties was altered by that correspondence. It is true, Grove required the vacation of the premises by the removal of the machinery, but Barclay refused to comply with that request, hence, the occupancy continued precisely as it was before. So Grove might, in relief of his property, have removed the machinery, but he elected, as he had a right to do, to let it remain where it was, and thus the original condition of affairs continued as it had been before the correspondence. Having thus a continuation of precisely the same circumstances after the notice as those which had previously raised the implication of a contract, it is impossible to see why that implication should not also be continued. Nor does the defendant's claim of right to the occupancy of the premises help him in his attempted avoidance of his implied contract to pay for their use unless he can prove that the claim thus made is substantial, for if the contrary were held, then might every such contract be defeated by the interposition of a fictitious claim of right in or to the subject matter of it.

The judgment of the court below is reversed and a new venire ordered.