## John K. Barclay, Plff. in Err., *v.* Henry S. Grove et al.

In an action to recover damages for an obstruction of the plaintiff's use of property by the refusal of the defendant to remove machinery stored therein, the cause of action was not a mere refusal to perform a duty; and a suit begun more than six years after the obstruction first took place was not barred by the statute of limitations.

In such a case it is not error for the court to charge that the plaintiff can recover for what he has lost annually by being obstructed in the use of his property, though he cannot recover for the dilapidation or destruction of it.

(Argued January 21, 1887.   Decided January 3, 1888.)

January Term, 1886, No. 449, E. D., before MERCUR, Ch. J., GORDON, PAXSON, TRUNKEY, GREEN, and CLARK, JJ.   Error to Common Pleas No. 4 of Philadelphia County to review a

NOTE.—For previous proceedings in this case, see Grove v. Barclay, 106 Pa. 155.

The facts of Sattler v. Opperman, 14 Pa. Super. Ct. 32, are similar, and resulted in the same determination.   So actions for continuing nuisances are not barred until the statutory period has elapsed after the last actual injury.   Stout v. Kindt, 24 Pa. 449; Blizzard v. Danville, 175 Pa. 479, 34 Atl. 846.

judgment in favor of the plaintiffs in an action on the case **for** damages to a building. Affirmed.

This action was begun on May 27, 1884, by Henry S. Grove, Wm. H. Grove, Clare E. Moore, Addie G. Moore, Conrad S. Grove, and George W. Grove, heirs at law of Conrad S. Grove, deceased, against John K. Barclay, to recover damages to the property No. 129 North Water street in the city of Philadelphia, caused by the refusal of defendant to remove certain machinery therein stored.

The facts are stated in the charge of the court, by ARNOLD, J.

At the trial Henry S. Grove, a witness for the plaintiff, was asked the following question:

"*Q.* To what extent did this machinery, engine, boiler, smoke stack, etc., interfere with your use of the property for any purpose for renting it or for storage?" Objection. Objection overruled. [1]

Questions of a similar nature as to the condition of the property were asked other witnesses and were objected to by defendant. The court in each case overruled the objections. [2–11]

The court refused to permit the defendant to prove by John B. Stevenson that the machinery could have been removed for $200 and stored for less than $100. [12]

The court charged as follows:

Andrew C. Barclay owned property No. 43 North Wharves, and numbered, as you have been told, 136 Delaware avenue, and also 129 North Water street. On the 1st day of December, 1856, he leased that property to the partnership firm of Boyer & Barclay, for use as an oil mill for one year, at $2,200 a year. Andrew C. Barclay also owned the adjoining property on the south, No. 127 North Water street; and on the 31st of December, 1859, he leased the two properties, 127 and 129 North Water street, and the machinery therein, to that firm of Boyer & Barclay, for the purpose of manufacturing oil, for five years at $3,400 a year.

On April 1, 1863, Andrew C. Barclay conveyed to A. Charles Barclay the property No. 129 North Water street, which is the property which has given rise to this litigation, for $13,000,

which was paid or secured to be paid by a purchase-money mortgage for that amount. On that same day, April 1, 1863, Andrew C. Barclay conveyed to the defendant, John K. Barclay, the adjoining property, 127 North Water street, for $16,000, which was paid, or secured to be paid, by a purchase-money mortgage of that amount.

On the same day, the 1st of April, 1863, John K. and A. Charles bought from Andrew C. Barclay his interest in certain machinery then in the tenancy of Boyer & Barclay, at No. 136 North Delaware avenue (or No. 129 North Water street), consisting of steam engines, sundry boilers, shafting, etc., for $16,000, for which they gave their bond for that amount, payable in one year, and that bond was subsequently paid. You will, therefore, remember that on the 1st day of April, 1863, A. Charles Barclay became the owner of No. 129 North Water street, which is the property giving rise to this dispute, and on the same day John K. Barclay became the owner of the adjoining property 127 North Water street, and the same day they became joint owners of all the machinery in those properties.

Mr. Boyer, a member of that firm, retired in April, 1864; and then the defendant, John K. Barclay, and his brother, A. Charles Barclay, continued the business, under the name of Barclay & Barclay, until January 1, 1871, when they dissolved partnership and went into a court of equity for settlement of their business, and they are there yet.

After the dissolution of the firm of Boyer & Barclay, in 1864, it was agreed that the assets of the firm, excepting book debts, flax seed, and loans, should be appraised; and the defendant testified that the assets were appraised at $40,000 and that he bought them at that sum, but that notwithstanding his purchase his brother, A. Charles, afterwards claimed to be a joint owner of that machinery, and that he made that claim in the equity suit for a settlement of the partnership.

On June 20, 1873, that is, two and a half years after the dissolution of the firm, A. Charles Barclay conveyed the real estate No. 129 North Water street to Conrad S. Grove, for $6,000, subject to the mortgage of $13,000, who, on December 17, 1873, wrote a letter to John K. and A. Charles Barclay, requiring them to remove the machinery in that property, No. 129 North Water street, within ten days, and informing them that unless

they did remove it, he, Grove, would sell the machinery at public sale, at their risk and expense.

To this letter A. Charles Barclay made no reply; but the defendant, by his counsel, on December 19, 1873, reminded Mr. Grove that he (Grove) bought with knowledge of the complications in regard to the property, and that he knew that the smoke stack (and these were the words of John K. Barclay) was part of the machinery; that the ownership of that machinery and real estate was in dispute before a master in chancery, and that he (Barclay) would hold him (Grove) responsible for any damage that he (Barclay) might sustain through him (Grove) by reason of any interest he (Barclay) may or can have in said real estate, machinery, etc. That is to say, A. Charles Barclay made no denial, no reply, and no answer even to Mr. Grove's taking upon himself to remove the machinery. John K. Barclay did answer, and claimed that the smoke stack was part of the machinery, and that the right to the real estate was in dispute, and that he (Barclay) would hold Grove responsible for any damage done to that property.

When Mr. Grove got this letter, he desisted from his purpose of selling the machinery, and he filed a bill in equity, as you have been told, against John K. and A. Charles Barclay, to compel them to remove the machinery and pay damages for keeping it in the property. The answer of the defendant, John K. Barclay, in that suit was read to you. He admits in his answer that A. Charles Barclay has made no defense to the claim of the plaintiff for the removal of the machinery, but allowed the complaint to be taken as true, and submitted himself to the judgment of the court; while John K. Barclay refused to remove the machinery, and claimed what is called an easement in the real estate—that is, the right to subject that real estate to the burden of having the machinery kept on it during his pleasure.

[After several years' litigation, as you have ben told, that suit in equity was appealed to the supreme court, and the complaint was there dismissed, on the ground that the plaintiff should have commenced a suit at law instead of in equity, the difference being that in a suit at law the damages for keeping the machinery would be assessed by a jury, while in equity, they are assessed by the master in equity without the aid of a jury; that is, that he had brought his suit in the wrong court, and they

turned him out of equity and said he must go into a court of law before a jury, where he is now.] [31]

Grove died December 28, 1874, and this real estate, 129 North Water street, thereupon descended to his heirs, who are the present plaintiffs. On August 24, 1883, these plaintiffs conveyed the property to George G. Barclay and John M. Kennedy, paying the grantees $1,000 to take the property off their hands subject to the mortgage of $13,000. The heirs have brought this suit against John K. Barclay, and claim to recover damages from him for the obstruction or interference with their enjoyment and use of the property from May 27, 1878, which is six years prior to the time this suit was brought, until the time they conveyed the property to George G. Barclay and John M. Kennedy. That is their claim.

[I instruct you, therefore, that if Conrad S. Grove was a bona fide purchaser of the property, and the defendant resisted and denied the right of the plaintiffs and refused to vacate the property and take the machinery out, without any just claim of right, then the plaintiffs are entitled to recover in this suit for the damages caused by the obstruction of their use of the property by the unreasonable persistence of the defendant in the possession of the property without right. That is to say, if Mr. Grove was a bona fide purchaser of the property for value, and the defendant unreasonably and unwarrantably persisted in keeping the machinery in the property after he was notified to take it out, then these plaintiffs are entitled to recover damages for the interference with or the obstruction of their use of the property by his machinery in it.] [32]

[On the subject of good faith in the purchase of the property, I see nothing to impugn the title of Mr. Grove or his heirs. He appears to have purchased in the usual and ordinary way, by a deed; and the grantor, A. Charles Barclay, came to the stand and testified that he had put a bill for sale on the property, having openly exposed the property to sale for some time, and that the consideration money, $6,000, was actually paid to him by Mr. Grove.

If this testimony be true—and there is no denial of it on the part of the defense, except by way of argument of counsel, there being no testimony here to deny it—then Conrad S. Grove was a bona fide purchaser, and was entitled to possession subject to the rights of any tenant he found there.] [33] When he went

to the building he found the machinery there, and also the shaft extending through into the adjoining building. If he had made inquiry of Mr. Barclay in the adjoining building, he would have learned that the two brothers at one time occupied the two buildings as an oil mill; that the partnership had been dissolved for two and a half years, and that they were at that time in the court of equity for a settlement of the partnership disputes, and that A. Charles Barclay claimed to own one half of that machinery. [John K. Barclay's claim to an easement in that property, even if he had made it then, would not be a valid claim. The mere fact that the Barclays made improvements, or betterments, as they call it—dug out the cellar, dug a well, underpinned the walls, put in girders, and otherwise added to a permanent improvement of the property, would not make them co-owners of it, or subject it to an easement or servitude to the adjoining property, for no man or no tenant can, by improving leased property, thereby improve himself into the ownership of it.] [34]

[Therefore, the claim of the defendant to an easement or ownership is not well founded, and presents no obstacle whatever to the plaintiffs' claim in the case. If you believe that Conrad S. Grove was a bona fide purchaser for value, and that the defendant refused to remove the machinery, then the plaintiffs (that is, the heirs of Conrad S. Grove) are entitled to recover damages for the obstruction to their use of the property, to be measured by the extent that the obstructions deprived them of the use or enjoyment of it, or by the annual value of the property, less any use that they might have had or did have of the property.] [35]

[Some of the witnesses have testified that the property, in good order, was worth or would rent at $2,000 or $2,500 a year, and that the interference of the defendant was to the extent of 60 or 66 2-3 per cent of the annual value. The counsel for plaintiffs put their claim at $1,200 or 60 per cent of $2,000, claiming that they might have got $2,000 for the property if they had had it in possession to rent, and that the machinery obstructed it to the extent of 60 per cent; and therefore the plaintiffs claim from this defendant 60 per cent of $2,000, or $1,200 per year, during the time for which this suit was brought. The defendant alleges that the property was in such bad condition that it would not rent for anything; but he overlooks the fact

that, as the plaintiffs were kept out of the property by the defendant, there was no inducement or encouragement to the plaintiffs to keep up the condition of the property, while the defendant was obstructing them in the enjoyment of it, until in desperation they let it fall into such a condition of dilapidation, by nonrepair, that they at last paid other parties $1,000 to take it off their hands.] [36]

The plaintiffs cannot recover the loss of the capital value of the property; they cannot recover anything for the dilapidation or destruction of it, for they might have kept it up; [but they have a right to recover what they lost annually by reason of being prevented or obstructed by the defendant in the use of it, or from obtaining any income for it, if you believe that he did obstruct or interfere with them in the use and enjoyment of the property.] [37]

My attention has been called to the fact that I said that Boyer retired from the firm in April, 1864, and then the defendant, John K., and his brother, A. Charles Barclay, continued the business under the name of Barclay & Barclay until 1871. It seems, however, I made a mistake about that; that the two Barclays continued the business until 1866, and then it was dissolved and their dispute began.

Next it appears also that I have told you that John K. Barclay said he bought all the assets of the firm, including this machinery, for $40,000. Now counsel tell me that he did not say he bought all the machinery at that price. I was wrong so far as I have so instructed you, and I will correct it by saying that he did not claim to have bought all the machinery at the appraisement; that he bought all the new machinery, not the old, for which the $16,000 was expended. [In the rest of the answer to the point, however, I told you there was no evidence that A. Charles Barclay had ever made any claim to keep the machinery in the building, and the defendant himself, in his answer in the bill in equity, says that A. Charles Barclay made no defense; he confessed the justice of the plaintiffs' claim, and there was no reason why they should not have treated John K. Barclay as the defendant. The action sounds in tort; and where a man has a wrong committed upon him by a number he has a right to pick out one or two and let the rest go. These Grove heirs have seen fit to fire their shaft at John K., and let A. Charles Barclay go, and they had a right to do it. Whether

it was proper or fair or not is another question, but in law they had a right to do it.] [38]

The defendant submitted the following points:

1. The three conveyances, all bearing date April 1, 1863, of premises No. 127 North Water street (134 North Delaware avenue), to John K. Barclay, of No. 129 North Water street (136 North Delaware avenue), to A. Charles Barclay, and the machinery, etc., to the two jointly, form part of one transaction and are to be interpreted together.

*Ans.* I refuse that point. [13]

2. In view of the nature of the property assigned to John K. and A. Charles Barclay jointly by the assignment of April 1, 1863, and of the fact that it is part of a large transaction of which the conveyances of the real estate on the same date form part, that assignment authorized the owners of the machinery, etc., thereby assigned, to maintain and use it in the several houses.

*Ans.* I refuse that point. [14]

3. If the jury believe that the buildings Nos. 134 and 136 N. Delaware avenue (127 and 129 N. Water street) were acquired by John K. and A. Charles Barclay respectively for the purpose of a business of a firm of which they were members, and that that firm subsequently expended large sums of money in placing permanent machinery therein and in betterments to the buildings, for use in connection with the partnership business, the firm thereby acquired an interest in the real estate against the said Barclays, and any who purchased with notice.

*Ans.* That point I refuse in those terms. The evidence shows that the partners acquired and treated the real estate as separate properties, and that they charged and received annual credit for rent therefor in the books. It was never treated as joint partnership property. [15]

4. If the jury believe that during the ownership of the two houses by John K. and A. Charles Barclay, the firm of which they were both members, with the knowledge and concurrence of A. Charles Barclay, expended large sums of money on permanent machinery, etc., in the building owned by John K., which depended for its motive power and for its use on the machinery, etc., in the building of Charles, owned by the two jointly, this

gave the firm or John K. Barclay a right to maintain and use the said machinery, etc., in the building of Charles.

*Ans.* I refuse that point. [16]

5. If under the charge of the court the jury believe that at the time the plaintiffs' ancestor, Conrad S. Grove, purchased the house No. 136 North Delaware avenue, it was involved in a proceeding in equity then pending, and still pending, to settle the affairs of a firm in which his vendor and this defendant were partners, the plaintiffs cannot maintain this action against this defendant alone, while the said proceedings for the settlement of the affairs of the firm are pending.

*Ans.* I refuse that point. [17]

6. The remedy of the plaintiffs, and of their ancestor, was to be made a party to the proceedings in equity for the settlement of the affairs of the firm of which the Barclays were members.

*Ans.* I refuse that point. [18]

7. According to the evidence, A. Charles Barclay, the vendor of the plaintiffs' ancestor, was a joint owner of the machinery, etc., with the defendant, and liable, at least, jointly with him. If the jury believe that the plaintiffs have conveyed the property back to him through George G. Barclay and John M. Kennedy, and settled any claim against him, the claim against this defendant is thereby discharged.

*Ans.* That point I refuse. There is no evidence on which the jury could find that the plaintiffs had settled with A. Charles Barclay. [19]

8. In this action, and under the declaration, the cause of action is the failure to remove the machinery, etc. This cause of action (if any such there was in the plaintiffs) was complete more than six years before suit was brought, and the verdict must be for the defendant.

*Ans.* I refuse that point. [20]

9. The measure of damages under the declaration (if under the charge of the court the verdict is for the plaintiffs) is, at the most, the reasonable cost of removing the obstructions.

*Ans.* I refuse that point. [21]

10. The plaintiffs having failed to remove the obstructions, they are only entitled to nominal damages.

*Ans.* I refuse that point. [22]

11. The rental value of the premises is not the measure of damages.

*Ans.* My answer to that is the rental value is an element from which, with others, the damages to the plaintiffs can be ascertained. It is not a binding rule, but it is an element you will consider in estimating the damages; because the plaintiffs are entitled to damages by reason of the obstruction or interference with their right of enjoyment of the property. [23]

12. The plaintiffs were required to take all convenient means to reduce their damages; and if the jury believe that, relying on the supposed liability of the defendant, they voluntarily failed to take proper measures to secure an income from the building, and that by reasonable exertions such income might have been secured, this may be considered in mitigation of damages.

*Ans.* That point I affirm. The defendant is not to be charged with any income which the plaintiffs might have received from the property if they had taken proper measures to secure such income, but he is chargeable with any income which the plaintiffs lost by reason of his encumbering of the building and interfering with the use and enjoyment of it. [24]

13. It was the duty of the plaintiffs, in order to reduce the damages, to remove the alleged obstruction within a reasonable time, which time had elapsed more than six years before suit was brought. Their claim as set forth in the present declaration is therefore barred by the statute of limitations.

*Ans.* I refuse that point. The plaintiffs had a right in view of the position which the defendant assumed in the letter of December 19, 1873, and the language of the supreme court in this very case, "to elect to let the machinery remain where it was," and sue the defendant for use and occupation of the property, or for damages for the obstruction of the enjoyment of the property, and they have sued for the latter. [25]

14. As the size and character of the machinery, etc., upon the premises in question were of such a nature as to interfere with their entire use, Conrad S. Grove, when he bought the premises, was bound to inquire as to them, and the rights of the owners of the machinery, etc., therein, and he and his heirs must be presumed to have known what the rights of John K. therein were as against A. Charles Barclay, and if A. Charles could not have compelled John K. Barclay to remove the machinery, etc., the plaintiffs can have no greater right to compel such re-

moval, or to maintain this action against the defendant, than A. Charles Barclay had when he conveyed the premises to Conrad S. Grove.

*Ans.* That point is answered in the general charge. [26]

15. That under all the evidence in the case, upon both sides, neither Conrad S. Grove nor his heirs can have any greater rights in the premises than A. Charles Barclay had at the time he conveyed to Grove.

*Ans.* That point is answered in the general charge. [27]

16. That, as the rights of A. Charles and John K. Barclay to the machinery, etc., were in dispute in the partnership bill filed by the former, A. Charles could not maintain any action for the nonremoval of the machinery, etc., against John K. Barclay, as he could have removed the same himself, or have applied to the court in which said bill was pending for the appointment of a receiver to take charge of and remove or sell the same, or for such other relief in the premises as the said court might think him entitled to in the circumstances.

*Ans.* I refuse that point, and for additional answer refer to the answer to point 13. [28]

17. That if the jury find that A. Charles and John K. Barclay were each half owners of the machinery, etc., costing $16,000, and that this item included the smoke stack and other betterments, A. Charles had no right to require John K. Barclay to remove the smoke stack and other betterments from the premises in question, and could not maintain an action against him for neglecting or refusing so to do.

*Ans.* That would be so but for the letter of December 19, 1873, in which the defendant asserted that the smoke stack was part of the machinery, and included in the ban contained in that letter. Therefore, Grove, who was the owner of the property, has a right to complain of the obstruction or interference as much from the smoke stack as from the machinery. [29]

18. That if the jury find that A. Charles and John K. Barclay were joint owners of the machinery, etc., upon the premises in question, which interfered with the full use of the premises, A. Charles had no right to require John K. Barclay to remove the same from the premises in question, and could not maintain any action against him for neglecting or refusing so to do.

*Ans.* I refuse that point. The defendant testified that he bought all the machinery at an appraisement, and he alone

claimed the right to keep it in the property of the plaintiffs. A. Charles Barclay never made any such claim, and it appears that he never made any objection to the removal. The action is in tort, or for a wrong in obstructing or interfering with the plaintiffs in the use and enjoyment of their property, and the evidence does not show that A. Charles Barclay ever obstructed or interfered with the plaintiffs' enjoyment of their property. [30]

Verdict and judgment for plaintiffs, for $7,969.03.

The asignments of error specified: (1-12) The admission and rejection of evidence; (13-30) the answers to defendant's points; and (31-37) the portions of the charge included within brackets and designated by numbers, respectively.

*J. Howard Gendell* and *George Junkin,* for plaintiff in error. —The circumstances amount to a license by the one owner of the land to himself and co-owner of the chattels to retain and use them in their position.

A license which comprises or is connected with a grant is irrevocable. Wood v. Leadbitter, 13 Mees. & W. 844.

So also is a license when acted on. Le Fevre v. Le Fevre, 4 Serg. & R. 241, 8 Am. Dec. 696; Rerick v. Kern, 14 Serg. & R. 267, 16 Am. Dec. 497; Swartz v. Swartz, 4 Pa. 353, 45 Am. Dec. 697; Ebner v. Stichter, 19 Pa. 19; Huff v. McCauley, 53 Pa. 206-8, 91 Am. Dec. 203. See also Davis v. Souder, 10 Phila. 113; Gardner v. Weaver, 11 W. N. C. 544; M'Kellip v. M'Ilheuny, 4 Watts, 317, 28 Am. Dec. 711.

Where the owner of two adjoining tenements so disposes of and arranges them that one of them is used for the benefit of the other, so that the use is visible and notorious, upon the sale of one of the tenements there is an implied grant or reservation, as the case may be, of the use. Kieffer v. Imhoff, 26 Pa. 438; Cannon v. Boyd, 73 Pa. 179; Seibert v. Levan, 8 Pa. 383, 49 Am. Dec. 524; Overdeer v. Updegraff, 69 Pa. 110; McCarty v. Kitchenman, 47 Pa. 239, 86 Am. Dec. 538; Phillips v. Phillips, 48 Pa. 178, 86 Am. Dec. 577; Pennsylvania R. Co. v. Jones, 50 Pa. 417; Murphy v. Bedford, 35 Phila. Leg. Int. 262; Building Asso. v. Getty, 11 Phila. 305; Hart v. Mentel, 26 Pittsb. L. J. 33; Swartz v. Swartz, 4 Pa. 353, 45 Am. Dec. 697; Rerick v.

Kern, 14 Serg. & R. 267, 16 Am. Dec. 497; M'Kellip v. M'Ilhenny, 4 Watts, 317, 28 Am. Dec. 711.

The house itself ought to be treated as partnership assets, and brought into the settlement of the firm affairs.

This can readily be done, as the house has been reconveyed to A. Charles Barclay. Lacy v. Hall, 37 Pa. 360; Meason v. Kaine, 63 Pa. 335.

The cause of action accrued at once when the defendant refused to perform the duty; and the statute of limitations then began to run. Seely v. Alden, 61 Pa. 302, 100 Am. Dec. 642; Livezey v. Philadelphia, 64 Pa. 106, 3 Am. Rep. 578; Simpson v. Keokuk, 34 Iowa, 568; Van Pelt v. Davenport, 42 Iowa, 308, 20 Am. Rep. 622; Emery v. Lowell, 109 Mass. 197; Fowle v. New Haven & N. R. Co. 112 Mass. 334, 17 Am. Rep. 106.

Lastly, there is another aspect in which the wrong is not a continuous one, and this fact bars the plaintiffs' rights altogether.

The rule laid down in 3 Sutherland on Damages, pp. 403 and 809, is that where the wrongful act must necessarily continue to produce loss, independent of any subsequent wrongful act, all the damages, both before and after the suit, may be recovered therein. If active measures must be taken to remove the cause of damage, one suit which may be brought at once must include all the damage. Powers v. Council Bluffs, 45 Iowa, 652, 24 Am. Rep. 792.

*John G. Johnson* for defendants in error.

OPINION BY MR. JUSTICE PAXSON:

When this case was here before (see 106 Pa. 155) it was said by our brother GORDON, in delivering the opinion of the court: "Grove might, in relief of his property, have removed the machinery; but he elected, as he had a right to do, to let it remain where it was, and thus the original condition of affairs continued." And again: "The jury and they might have found for the plaintiffs on either of the three following grounds: for the use and occupation of the premises; on an implied contract for storage; or for an obstruction of the plaintiff's use of the property by an unwarrantable persistence by the defendant in the possession of it without right."

The plaintiff went to trial in the court below for the last

named of these causes of action, and the case now comes up with a verdict in his favor. The assignments of error are numerous, but they are all discussed under the three classifications of the defense as they appear in defendant's (plaintiff in error's) paper book. The said classifications are as follows:

1. "The defendant below had a right to maintain his property in the premises in question."

2. "If the plaintiffs have any cause of action it is only to be enforced by intervening in the partnership suit."

3. "In this form of action, the cause of action being the refusal to perform a duty, the breach was complete at once. It is not a continuing cause of action. The suit is barred by the statute of limitations. Even apart from the bar of the statute the measure of damages is entirely different in this suit from what would be proper in a suit for storage, or for use and occupation."

The first two propositions are covered by what was said upon the former writ of error and will not be further discussed.

We do not regard the third ground of defense as well taken. The cause of action was not, as is assumed in the position and argument, a mere refusal to perform a duty. On the contrary, it was substantially for an obstruction of the plaintiffs' use of their property by means of which they were unable to occupy or lease it, and lost the rents and profits thereof. Under these circumstances we are of opinion that this suit is not barred by the statute of limitations.

Nor are we able to see any error in the measure of damages as laid down by the court. Upon this point the learned judge said: "The plaintiffs cannot recover the loss of the capital value of the property; they cannot recover anything for the dilapidation or destruction of it, for they might have kept it up; but they have a right to recover what they lost annually by reason of being prevented or obstructed by the defendant in the use of it, or from obtaining any income for it, if you believe that he did obstruct or interfere with them in the use and enjoyment of the property."

We see nothing in this language to criticise, nor in that portion of the charge bearing upon the same point, embraced in the thirty-sixth assignment of error.

None of the assignments of error is sustained.

Judgment affirmed.