# Bigbee Fertilizer Co. *v*. Scott.

## *Damages for Maintaining a Nuisance.*

(Decided Nov. 23, 1911. 56 South. 834.)

1. *Landlord and Tenant; Injury to Freehold; Right to Recover.*—The owner of land may sue for a nuisance causing injury to the reversion although the nuisance itself was temporary, and although the land was in the possession of a tenant.

2. *Nuisance; Injury to Freehold; Right to Recover.*—Where the action was for a continuing nuisance from the year 1907 to the date of filing the complaint, a complaint alleging that the injuries occurred subsequent to some day in 1907, and that on account of the fumes constituting the nuisance, plaintiff was unable to cultivate properly or to rent or lease advantageously her truck farm for the current year, sufficiently shows that damages have been sustained in consequence of a nuisance during the twelve months next prior to the filing of the complaint; such a complaint states a cause of action notwithstanding the rule that one suing for a

nuisance may only recover damages suffered within twelve months next preceding the commencement of the action.

3. *Same; Private Nuisance; Injury to Land; Evidence.*—In an action for a continuous nuisance causing injury to crops and fruit trees, it is competent to introduce evidence as to the character of the land, its fertility, and the means provided and used to insure the healthy growth of crops and trees as bearing upon the amount of the damage.

4. *Same; Damage to Crops; Measure.*—In an action for a nuisance where the evidence showed a constant application of noxious fumes and gases escaping from defendant's factory on to plaintiff's crop from the time it was planted, stunting it in its growth, retarding its maturity, and materially decreasing the yield, and the plaintiff was permitted to prove without objection what other crops in the neighborhood, not affected by the fumes, yielded that year, and their value when matured, the jury could consider what the crops on plaintiff's land would have made, but for the nuisance, in estimating the damages, and was not limited to the value of the crops when destroyed as a measure of damages.

5. *Trial; Objections to Evidence; Sufficiency.*—In an action for a nuisance destroying a corn crop where a witness testified that the crop was so badly burned that it produced no corn, and that if the corn had not been damaged it would have produced two hundred bushels to the acre, a question as to how much the two hundred bushels would have been worth on the market called for the value of the corn which would have been produced had it matured; and an objection to the question that a witness should not be permitted to testify as to what the crop was worth at the time it was injured was inapt and properly overruled.

6. *Damages; Torts; Measure.*—The damages recoverable for a tort are those naturally and proximately resulting, whether contemplated or not.

7. *Same; Evidence.*—The mere fact that in an action for tort the evidence does not establish the amount of damages with perfect certainty will not defeat the right of recovery; it is sufficient if the evidence furnishes data for an approximate estimate of the amount.

8. *Appeal and Error; Matters Reviewable; Request for Instructions.*—Under the rule that the giving of a misleading charge is not reversible error, and that the party aggrieved should request explanatory instructions a charge in an action of nuisance which does not limit the damages recoverable to those occurring within twelve months of the filing of the complaint, furnishes no ground for complaint on the part of the defendant upon his failure to ask a charge limiting the damages to such an amount.

9. *Husband and Wife; Property; Evidence; Jury Question.*—The evidence in this case examined and held to require a submission to the jury of the question as to whether the wife, and not her husband was the owner of the crop and hence to justify the jury in finding that she was and authorizing a recovery by her.

APPEAL from Montgomery City Court.

Heard before Hon. WILLIAM H. THOMAS.

[Bigbee Fertilizer Co. v. Scott.]

Action by Adelaide Scott against the Bigbee Fertilizer Company, for damages for maintaining a nuisance resulting in injury to her crops and land. Judgment for plaintiff and defendant appeals. Affirmed.

STEINER, CRUM & WEIL, for appellant. The court erred in overruling demurrers to the complaint, as it has often been decided that only damages which have been done during the year preceding the filing of the complaint can be recovered.—*Tutwiler C. & I. Co. v. Nichols,* 39 South. 762; *Ala. C. C. & I. Co. v. Vines,* 151 Ala. 398; *Sloss-Sheffield v. Sampson,* 48 South. 493; 19 Ohio C. 488; 98 N. W. 782; 73 N. E. 322; 19 S. E. 401; 67 Ill. App. 351. A complaint not alleging specifically when the damage was done, is demurrable.—*Sloss- S. Co. v. Sampson, supra.* What amount of crop the plaintiff would have made without the injury is conjecture.— *Gresham v. Taylor,* 51 Ala. 505. The measure of damage was the value of the crop at the time of the alleged destruction.—*A. B. & A. R. R. Co. v. Brown,* 158 Ala. 618. The court erred in giving charges 1, 2 and 3 at the request of the plaintiff.—Authorities supra. The court erred in refusing to give charges 1, 2, 3 and 5 requested by the appellant.—Section 4742, Code 1907; *Gill v. The State,* 124 Ala. 75; *Kilpatrick v. Harper,* 119 Ala. 452.

RAY RUSHTON, THETFORD & MCKENZIE, and WILLIAM. M. WILLIAMS, for appellee. The assignments of error do not conform to rule 1, Supreme Court Practice.— *Williams v. Coosa M. Co.,* 138 Ala. 673; *Glover v. Lyons,* 57 Ala. 365. The court did not err in overruling the demurrers to the complaint, 1st, because there was no ground of demurrer based on a failure to. allege possession.—Section 5340, Code 1907, and cases cited. 2nd, there was no necessity to allege the possession.—

[Bigbee Fertilizer Co. v. Scott.]

*Drake v. Lady E. C. Co.,* 102 Ala. 501; *Tenn. Co. v. Hamilton,* 100 Ala. 252. 3rd, the principle of *sic utere tuo* is applicable to the case at bar.—25 Am. St. Rep. 595; 63 Id. 533; 46 Id. 736. The time was sufficiently alleged in the complaint.—*Ala. Mid. Ry. Co. v. Marbury,* 100 Ala. 511; *Thornton v. Cochran,* 51 Ala. 415. The statute of limitations cannot be availed of by demurrer, but must be specially pleaded.—*Huntsville v. Ewing,* 116 Ala. 576; *Bolling v. Jones,* 67 Ala. 508. The court did not err relative to the evidence.—*A. B. & A. R. R. Co. v. Brown,* 151 Ala. 607; 36 Pac. 254; 21 S. W. 1010; 21 S. W. 1013; 38 Ia. 518, and authorities there cited. The court did not err in giving charges 1, 2 and 3, requested by plaintiff.—*Jones v Fort,* 36 Ala. 449; *Miller v. The State,* 54 Ala. 155; *Pullman Pal. Car v. Adams,* 120 Ala. 581. The court did not err in refusing charges 1, 2 and 3 requested by appellant.—*Chancellor v. Tell,* 141 Ala. 634, and authorities there cited.

DE GRAFFENRIED, J.—This suit was brought by appellee against appellant for damages which appellee alleges in her complaint she suffered because of the maintenance by appellant of a nuisance near her premises.

The complaint alleges, in substance, that the appellant is engaged in the business of manufacturing fertilizers, and that it owns and operates a fertilizer plant situated about one-sixth of a mile from 37 acres of land, the property of the plaintiff; that in the operation of its said fertilizer plant the appellant generated flourine gas, and permitted the same to escape through its pipes and become mixed with the atmosphere; that appellee had a peach orchard on said lands, and used the balance of the property, except certain portions, upon

[Bigbee Fertilizer Co. v. Scott.]

which there were certain residences, as a garden, in which was raised garden products; that flourine gas is deadly in its effects upon all vegetable life; that said gas which so escaped from appellant's pipes settled down upon the appellee's premises, killing her peach trees, destroying her corn after the same had about reached maturity, rendering it unfit for any purpose, save that of fodder, and greatly reducing the yield of the other crops on said land. The complaint alleges that the nuisance complained of had been maintained by the appellant since the ———day of———, 1907, and concludes as follows: "And that said fumes and gases have rendered the said buildings, hotbeds, and equipments less valuable, and that on account of said fumes and gases the plaintiff was unable to cultivate profitably, or rent, or lease, or truck farm advantageously for the current year."

1. Several grounds of demurrer were interposed to the complaint. The court held the complaint not subject to the demurrer, and the action of the court in overruling two of the grounds of demurrer which were interposed to the complaint is here insisted upon as error. It is insisted that the complaint was demurrable because it failed to show that appellee was in possession of said lands during the period covered by the injury complained of. The complaint certainly, as a whole, was not subject to that ground of demurrer, because it alleges that the fruit trees of appellee, which were a part of her freehold, were destroyed. It is familiar that the owner of the title, even though the lands may be in the possession of a tenant, may sue, under the circumstances set out in the complaint, for any injury to the reversion. While the nuisance was itself temporary in its nature, nevertheless, under the allegations of the complaint, while it existed, an injury was

done to the reversion by reason of the destruction of the fruit trees, and, accepting the construction which appellant asks us to place upon the complaint, the appellee, as owner of the reversion, was entitled to sue for damages so done to the reversion.—21 Am. & Eng. Ency. Law, p. 722, subd. 2.

2. The second ground of demurrer insisted upon here is that the complaint does not show with reasonable certainty when the injuries complained of occurred. The complaint does show that the injuries occurred subsequent to some day in the year 1907, and it does show that the appellee was injured by reason of such nuisance within less than 12 months before the filing of the complaint, because the complaint concludes, as above shown, in the following words: "And that on account of said fumes and gases the plaintiff was unable to cultivate profitably, or rent, or lease, or truck-farm advantageously for the current year." For the above reason, we do not think that the reasoning of the court in the case of *Sloss-Sheffield Co. v. Sampson,* 158 Ala. 590, 48 South. 493, in which, so far as the allegations of the complaint were concerned, the injuries might have occurred at any time within 10 years prior to the filing of the complaint, applies in any way to the complaint in this case. The present action was for maintaining a continuous nuisance from 1907 to the day the suit was filed; and while appellee was only entitled to recover for damages which had thereby been caused during the 12 months prior to the filing of the complaint, the complaint does show a cause of action, so far as that period is concerned.—*Huss v. C. R. & B. Co.,* 66 Ala. 472.

3. The evidence tended to show that the 37 acres, the subject of the inquiry, had been in cultivation for many years, and had been used as a garden, and that the appellee did not know of any continuing damage to her

[Bigbee Fertilizer Co. v. Scott.]

premises by reason of said nuisance until the year in which the suit was brought. The evidence further tended to show that the lands were in a high state of cultivation, and that, by means of pipes, a system of artificial irrigation had been installed thereon. It further tended to show that appellee planted the lands in corn, strawberries, cabbage, peas, and cantaloupes, and that one acre of the land was devoted to a peach orchard, and that the trees were seven years old. The evidence further tended to show that during damp weather, when the wind was from the east, the flourine gas which escaped from appellant's fertilizer factory was blown over and settled down upon appellee's land; that said flourine gas killed her peach trees, and materially decreased the yield of her strawberries, cabbages, and cantaloupes, and delayed the maturity of her pea crop, and that she was materially injured thereby. The evidence further tended to show that she had two acres of corn, and that the land upon which it was planted was in a high state of cultivation; that the corn grew off rapidly, and gave promise of a yield of 200 bushels to the acre. and that just about the time it had reached the age when the ears should appear flourine gas, from appellant's mill, was blown over and settled down upon it, and so injured it that it produced no ears, and was valuable only for its fodder.

During the progress of the trial, appellee's husband was examined as a witness, and was asked by her counsel the following questions: "Did you have any permanent improvements on the land by way of increasing the value of the cultivation, such as refrigerating plants and the like?" Appellant objected to this question, upon the ground that it called for irrelevant and incompetent testimony, but the court overruled the objection and permitted the witness to answer the ques-

tion, and the appellant then and there duly excepted. Answering the question, the witness said: "That the land had been used as a garden for a great number of years, and that there was a system of irrigation all over it, conveying water all through it, and that there were hotbeds on the ground, heated by steam pipes, and the land was so fertilized as to bring it up to the highest point of cultivation." The appellant moved to exclude the above answer of the witness upon the above grounds, and here assigns the refusal of the court to exclude the answer from the jury as error. The material questions before the jury in this case were whether appellee's crops had in fact been injured by gas from appellant's mill, and, if so, the amount of such injury. In order that the jury might ascertain the truth as to these matters, we think it was entirely proper for the court to permit all evidence tending to show the character of the land, its fertility, the means provided and used to insure a healthy growth, and all the general surroundings to go before the jury as matters for their consideration in determining those questions.

4.   While the witness Scott was on the stand, he was permitted to testify, without objection, as follows: "When the corn was about waist high, or a little less, it began to burn, and when it came time for it to ear it was so badly burnt that it failed to produce any corn. The corn was wired so as to support it, and if it had not been damaged by the fumes would have made 200 bushels to the acre." That he had been a farmer for a good many years, and was familiar with last year's seasons, and knew how rains came, etc. The witness was then asked by appellee's counsel the following question: "How much would that corn have been worth on the market—200 bushels?" The appellant objected to the question, "upon the ground that the facts should be

stated,. in order that the jury might determine the value of the corn at the time it was injured, and that the witness, whether an expert or not, should not be permitted to testify as to what the crop was worth in dollars and cents *at the time it was injured."* The court overruled this objection, and the witness was permitted to answer, to which action of the court the appellant duly and legally excepted. Answering the question, the witness said that "it was worth $200." The appellant moved to exclude the answer upon the above grounds but the court overruled the objection, and the appellant then and there duly excepted, and this ruling of the court is here assigned as error. The question propounded to the witness did not call for his opinion as to the value of the corn at the time of its injury, but did call for his opinion as to the value of the 200 bushels which, in the opinion of the witness the corn would have produced per acre, had it matured. For this reason it is evident that the question and answer were not subject to the specific objections made to their legality, relevancy, or materiality. The objection of appellant undertook to raise the question as to whether the witness could legally testify to the value of the corn at the time of the injury, when the question did not call for such opinion. It is therefore evident that the court committed no error in overruling appellant's objection to the question and its motion to exclude the answer.—*Steiner v. Tranum,* 98 Ala. 315, 13 South. 365.

5. The principal subject of contention between the parties to this litigation is as to the correct rule for the measurement of appellee's damages. In the case of *Gresham v. Taylor,* 51 Ala. 505, reaffirmed in *Atlanta & Birmingham A. L. Ry. Co. v. Brown,* 158 Ala. 607, 48 South. 73, our Supreme Court says that the correct rule for ascertaining the damages for the destruction of a

growing crop "is the value of the crop at the time it is destroyed." Appellant insists that the above cases declare the only rule by which the appellee's damages in this case should have been ascertained. It is undoubtedly true that the above rule, announced in *Gresham v. Taylor, supra,* is the only rule which has been declared by our Supreme Court for the measurement of the damages for the destruction of growing crops, and that the rule so declared is in accordance with the great weight of authority.—*Teller v. Bay & River Dredging Co.,* 151 Cal. 209, 90 Pac. 912, 12 L. R. A. (N. S.) 267.

In the case of *Gresham v. Taylor, supra,* our Supreme Court was dealing with the question as to what was the correct method of ascertaining the damages suffered by the owner of growing crops destroyed or injured at a fixed period of their growth, and only that question. The facts of the present case are entirely different from those which were under consideration in the cases of *Gresham v. Taylor and Railway Co. v. Brown, supra,* and present an entirely different question for our determination. In this case there was a constant application of a deleterious substance upon appellee's crops from the time they were planted, stunting them in their growth, retarding their maturity, and materially decreasing the quantity and value of their yield. The appellee, without objection, was permitted to prove what other crops in the neighborhood, not affected by the fumes from appellant's mill, yielded, the time of their maturity, and their value when they matured, in order that the jury might compare appellee's crops with crops raided under similar conditions and in the same neighborhood, but not subject to the effects of flourine gas.

In the case of *Bell v. Reynolds & Lee,* 78 Ala. 511, 56 Am. Rep. 52, Mr. Justice Somerville, speaking for the Supreme Court, said: "We would not be willing to say

that the damages here claimed by the defendant, Bell, by way of lost profits, would have been recoverable, if their ascertainment had been left to mere conjecture. The amount of cotton or other crops which land produces is dependent upon so many varying contingencies as to render it very indeterminate. It will vary with the seasons, the adaptation of soil and climate, and its comparative exemption from the ravages of worm or other destructive insects. Speculative opinions of witnesses, as to the probable influences of these operative causes, would be a poor criterion for the measure of values.—*Wilkinson v. Ketler,* 59 Ala. 306. In this case however, these difficulties are entirely removed. The character of the season is asolutely known. So is the precise effect of the fertilizer used during this particular season. No speculation is needed to show how much rain and how much sunshine were requisite to produce a given amount of crops to the acre, nor as to the probable effect of the fertilizer upon different kinds of soil, or even the proportion of it best suited to the land, and therefore what would necessarily have been produced on the remainder, which is shown to have been in precisely the same state of cultivation, and similar in quality of soil."

In the case last above cited, Reynolds & Lee had agreed to ship to Bell 20 tons of fertilizer, knowing the purposes for which it was desired. Bell only received 9½ tons, with which he fertilized a part of his field. The balance of the field remained unfertilized, because Reynolds & Lee failed to deliver the other 10½ tons. The Supreme Court permitted Bell to show how much cotton was produced per acre on the fertilized land, and how much was produced per acre on that which was not fertilized, and permitted him to recover as his damages the difference in value between what he *did* make on the

land without the fertilizer, and what he *would* have made on the same land with the fertilizer. While the above action was for a breach of contract, and the present suit is in tort, it furnished, in our opinion, to the trial court a proper criterion for estimating the extent of appellee's damages under the peculiar facts of this case.

In actions ex contractu, only such damages as are the natural and proximate result· of the breach of the contract, and which could reasonably have been contemplated by the parties as a probable result of the breach,. are recoverable; but in *tort* all damages naturally and. proximately resulting from the tort are recoverable,. whether contemplated or not.—*Birmingham Waterworks Co. v. Martini*, 2 Ala.·App. 652, 56 South. 830;. *Wallace v. Penn. Ry. Co.*, 52 L. R. A. 33, note 2.

The present case ·was tried after the end of the year in which the crops were planted, and the character of· the season at the time of the trial was absolutely known. While there was not that identical certainty about the· difference in the yield of the various crops near the· lands of appellee which were and which were not sub-- jected to the influences complained of as existed in the· case of *Bell v. Reynolds & Lee, supra,* nevertheless, if· appellee's evidence is to be believed, her damages at the· hands of appellant were actual and measurable, and not merely speculative. Some of her evidence tended to· show that she suffered greater damage than some of her· other evidence; but all of her evidence tended to show that her damages were not only substantial, but were· susceptible of estimation with reasonable certainty. To· illustrate, suppose appellee had permitted the appellant to run a pipe upon her land from its mill to· the Ala- bama river, for the purpose of piping its flourine gas; into the river, instead of permitting it to escape into the·

atmosphere; suppose the land through which this pipe ran had been planted in cabbages, and the appellant had so negligently operated its pipe as to permit the gas to escape and destroy or damage the yield of the cabbages for a distance of 50 feet on each side of the pipe— could it be successfully contended that the law would not permit a jury, in fixing appellee's damages, to take into consideration the yield of the balance of the field, and in this way arrive at an estimate of what the land would have produced but for the effects of the flourine gas. It is true that appellee's damages were not so well defined and were not the subject of so precise approximation as in the case supposed, but as was said by this court, in *Adams Machine Co. v. South State Lumber Co.*, 2 Ala. App. 471, 56 South. 826, "A party who has broken his contract cannot escape liability because of the difficulty there may be in finding a perfect measure of damages. It is enough if the evidence furnishes data for an approximate estimate of the amount of damage. —3 Sutherland on Damages (3d Ed.) § 704; 13 Cyc. 37." Certainly a tort-feasor should not be permitted to escape liability, because the court may find difficulty in declaring a perfect measure for the damages which have been suffered by reason of the tort.

As the facts in this case were such that the rule declared in *Gresham v. Taylor, supra,* could not be applied to them, we are of the opinion that the court committed no error in permitting the jury, under the evidence in the case to consider, in estimating appellee's damages, what the crops on her land would have made but for the existence of the nuisance complained of. This is substantially the rule which has been adopted by many of the courts of last resort in all such cases; and in many of the states where the rule, as declared in *Gresham v. Taylor, supra,* is the law it is held that it is proper and

important to introduce and admit evidence showing the kind of crops the land is capable of producing, the kind of crops destroyed, the average yield per acre of each kind on the land in dispute, and on other similar lands in the immediate neighborhood, cultivated in like manner, the stage of growth of the crops at the time of the injury or destruction, the expense of cultivating, harvesting, and marketing the crops, and the market value at the time of maturity, or within a reasonable time after the injury or destruction, of the crops, as valuable aids to the jury in determining the value of the crops at the time they were destroyed or injured.—*Teller v. Bay & River Dredging Co., supra.* It follows, therefore, that we are of the opinion that the court committed no error in refusing to give the various written charges which the appellant requested the court to give to the jury in its behalf.

6. It is true, as contended by appellant, that appellee was only entitled to recover damages suffered by her within the 12 months next preceding the bringing of her suit. It is contended by appellant that, as certain charges which were given to the jury by the court at the written request of the appellee, and which as applied to the facts of this case, in our opinion, state correct propositions of law, did not limit appellant's recovery to the damages suffered by her within one year before the filing of the suit, the court committed reversible error in giving them to the jury on that account. In other words, appellant contends that the charges asked by appellee and given by the court to the jury should have contained a statement that appellee was only entitled to recover for the damages suffered by her within the 12 months next preceding the bringing of the suit. It is sufficient for us to say that if appellant believed that the charges referred to had a tendency to mislead

[Bigbee Fertilizer Co. v. Scott.]

the jury it should have asked explanatory or additional instructions to obviate their misleading tendency, and having failed to do so the appellant will not be heard to complain. It is a familiar principle of law that the giving of a charge which may have a misleading tendency is not reversible error. The party aggrieved should ask an explanatory charge obviating the misleading tendency.—*A. G. S. R. R. Co. v. Jones,* 71 Ala. 487; 2 Mayfield's Dig. p. 515, § 230; *Birmingham R., L. & P. Co. v. Willie Murphy,* 2 Ala. App. 588, 56 South. 817.

It is contended by appellant that the evidence in this case shows conclusively that the title to the crops was in the husband of appellee, and not in appellee, and that for that reason appellee was not entitled to recover for any injury done them. The evidence shows, without controversy, that appellee's husband farmed the land and furnished the money necessary to do so. In a part of his testimony, he states that he harvested and gathered the crop, and spent the money, but in another part of his testimony he stated that it was understood between him and his wife that he worked the land for her. It is not for us, as a matter of law, to say that appellee's husband was, as between himself and his wife, the owner of the crop. In our opinion, that question was one for the jury. —*B. R. L. & P. Co. v. Murphy, supra.*

We have carefully considered all of the questions presented by this record, and, in our opinion, there was no reversible error committed by the court below in the trial of this cause, and for this reason the judgment of the court below is affirmed.

Affirmed.