# International Agricultural Corporation v. Burton.

## Damage to Crops.

(Decided June 18, 1915. Rehearing denied July 2, 1915.
69 South. 417.)

1. *Damages; Evidence; Crops.*—Where the action was for damages to growing crops alleged to have been caused by fumes emitted from a neighboring fertilizer factory, evidence as to how much the land would have yielded to the acre, with certain fertilization and under certain cultivation, if it had not been injured by the fumes, was admissible on the question of damages at the time of the injury.

2. *Same; Instructions.*—In such an action charges directing the jury to find for defendant as to crops grown on a certain portion of land, on the theory that plaintiff could not recover for damages to the crops of tenants in common other than herself, were properly refused as not based on the evidence, where it appeared that plaintiff cultivated individually some of the land in said tract.

3. *Same.*—In such a case charges asserting that if plaintiff furnished the land, the mules and one-half of the fertilizer, and the tenant furnished the labor and one-half of the fertilizer, the crop to be divided between them equally, then plaintiff could not be awarded damages for the half interest in the crops belonging to the croppers, should have been given, as plaintiff was entitled to recover only for her own interest in the crops grown.

4. *Appeal and Error; Harmless Error; Instruction.*—Where the relation of tenant in common did in fact exist between plaintiff and her croppers, and the court did not charge that it did not exist, the giving of an instruction as to when the relation of tenants in common of the crop, and the relation of laborer and hirer arose between plaintiff and her tenants, even if abstract, did not constitute reversible error.

APPEAL from Montgomery City Court.

Heard before Hon. GASTON GUNTER.

Action by Evelyn W. Burton against the International Agricultural Corporation, for damages because of injury to her crops. Judgment for plaintiff and defendant appeals. Reversed and remanded.

RUSHTON, WILLIAMS & CRENSHAW, for appellant.

HILL, HILL, WHITING & STERN, and WEIL, STAKELY & VARDAMAN, for appellee.

MAYFIELD, J.—Appellee sued appellant to recover damages for injury to growing crops, alleged to have been caused by noxious fumes emitted from the defendant's factory for the manufacture of commercial fertilizers. The trial resulted in a judgment in favor of the plaintiff for $1,125, from which judgment the defendant prosecutes this appeal.

The complaint was short, and, omitting the formal parts, was as follows: "That during the year 1913 the plaintiff was cultivating under a lease from Jane A. Marks a certain tract of land, comprising 500 acres, more or less, situated in Montgomery county, Alabama, near the city of Montgomery, Alabama, and more particularly described as follows: 'All that portion of that certain plantation purchased by Jane A. Marks from Adelaide Scott and Michigan S. Scott, her husband, by deed recorded in office of the judge of probate of Montgomery county, Alabama, and known as the Scott Bend plantation, which lies east of the bluff running through said plantation from the Alabama river to the public road known as the River Bridge road, and containing about 500 acres.'

"And plaintiff further alleges that the International Agricultural Corporation during said year 1913 owned and operated a fertilizer factory for the manufacture of commercial fertilizers, situated in close proximity to said land; that during said year 1913 the defendant, in the conduct of said fertilizer factory and in the manufacture of said commercial fertilizers, generated and liberated large quantities of noxious and injurious fumes and gases from its said fertilizer factory, and that said noxious and injurious fumes and gases were of a nature

highly deleterious and destructive to vegetation, and by reason thereof the plaintiff's crops of oats, corn, cotton, and vegetables which were being cultivated on said land were greatly injured and damaged; and plaintiff alleges that said crops were injured and damaged by reason of and because of said noxious fumes and gases generated and liberated by the defendant."

There were no special pleas, but issue was joined on this complaint; consequently there are no questions as to rulings on the pleadings. The assignments of error go to rulings in the admission or rejection of testimony and to the giving or refusing of requested charges or instructions. The rules of law governing the admission of evidence on trials like this have recently been fully discussed by this court and by the Court of Appeals in the cases of *International Agricultural Corporation v. Abercrombie,* 184 Ala. 244, 63 South. 549, 49 L. R. A. (N. S.) 415, and *Bigbee Fertilizer Co. v. Scott,* 3 Ala. App. 333, 56 South. 834. For this reason it is not neecssary, and it would serve no good purpose to reopen here the discussion; there being raised on this appeal no new question touching the rulings on the evidence. It is perfectly evident, from an inspection of the record in this case, that the trial court followed the former decisions in its rulings as to the admission of evidence on this trial.

(1) Appellant separately complains as to each of the several rulings of the trial court in overruling its objections to questions propounded to witnesses for the plaintiff and in declining to exclude the answer to each. Some of these questions were as follows: "If it hadn't been affected by some unnatural cause, how much, in your opinion, would the land have made to the acre?"

"And aside from your experience as a farmer, if that land is thoroughly cultivated, thoroughly broken, then

[International Agricultural Corporation v. Burton.]

cultivated shallow, and frequently, with 300 pounds of commercial fertilizer to the acre on 200 acres, and the other 100 acres, presuming it is 300 acres in the tract, and on the other 100 acres several hundred loads of dairy manure, coming from 150 cows, some around his house, some out on the red land, near the plant, how much in your opinion would that land have made on an average to the acre, if it had not been affected by any unnatural cause or causes?"

"Well, if that land was thoroughly broken and had frequent and shallow cultivation, with the season that it had last year, and with 300 pounds of commercial fertilizer to the acre, how much in your opinion would it have produced to the acre, if it had not been affected by any unnatural causes?"

It was said on the appeal above referred to (184 Ala. 254, 63 South, 552, 49 L. R. A. [N. S.] 415): "A crop has an actual and also a potential existence, and a fair valuation can be made by witnesses of experience, who are acquainted with the character of the land on which it is growing and the product derived from such land when properly cultivated, the ordinary course of agriculture and the climatic conditions of the region, the market price of ripened grain or product in the vicinity when mature, and also how far the crop had progressed toward maturity when injured or destroyed. Consideration may be taken of these and perhaps other conditions in estimating the value of the crop; but these are not measures of value, but only evidence to enable a jury to determine the value of the crop at the time and place of the injury and destruction."

And again (Id.) that: "In cases of destruction of growing crops, it is proper and important to introduce and admit evidence showing the kind of crops the land is capable of producing, the kind of crops destroyed, the

average yield per acre of each kind on the land in dispute, and on other similar lands in the immediate neighborhood, cultivated in like manner, the stage of growth of the crops, at the time of injury or destruction, the expenses of cultivating, harvesting, and marketing the crops, and the market value at the time of maturity, or within a reasonable time after the injury or destruction of the crops; and while all such evidence may be considered by the jury in determining the amount of damages, if any, still the true measure of compensation is the value of the crops in the condition they were in at the time of their injury or destruction."

If this is the law on the subject—and we think it is—there was no error in any of the rulings on the evidence, and it would do no good to discuss each ruling separately.

(2, 3) The evidence developed that about one-half of the land on which the crops in question were grown was cultivated by the plaintiff with hired labor, and that the other half was cultivated by share croppers; plaintiff furnishing the land, the teams, and one-half of the fertilizer, and the other share cropper furnishing the labor and the other half of the fertilizer, and each to reecive one-half of the crop so produced. Under the rule announced in the cases of *Hendricks v. Clemmons,* 147 Ala. 590, 41 South. 306; *Haynes Co. v. Bell,* 163 Ala. 326, 50 South. 311, and *Bain v. Hodges,* 4 Ala. App. 421, 58 South. 957, as to the crop produced on this half of the land so cultivated on shares, plaintiff was a tenant in common. The evidence did not show, however, what particular part of the land in question was so cultivated.

On the theory that there could be no recovery in this action for the crops of the tenants in common other than the plaintiff, the defendant requested several written charges, as follows: "(2) If you believe the evidence in

this case, you cannot find for the plaintiff for any damage to the cotton on the west side of the railroad.

"(3) If you believe the evidence in this case, you cannot find for the plaintiff for any damages to the cotton on the east side of the railroad.

"(4) If you believe the evidence in this case, you cannot find for any interest that you may find the plaintiff's 'croppers' had in the crop.

"(5) If you believe from the evidence in this case, that the plaintiff's agreement with her 'croppers' was that she should furnish the land and the mules and one-half of the fertilizer, and the 'croppers' should furnish the labor and one-half of the fertilizer, and that the crop was to be divided between the plaintiff and the croppers, one-half to the plaintiff and one-half to the croppers, you cannot award the plaintiff any sum as damages for one-half interest of the croppers, if you should decide that the plaintiff is entitled to recover.

"(6) If you believe the evidence in this case, that there was a contract between the plaintiff and the croppers that the plaintiff should furnish the land, the mules, and one-half the fertilizer, and that the croppers should furnish the labor and one-half the fertilizer, and that the crop should be divided in halves between the plaintiff and her croppers, I charge you that the relation of tenants in common existed between the plaintiff and her croppers, and should you, after a consideration of all the testimony, decide that the plaintiff is entitled to recover, you cannot award the plaintiff any sum as damages to the interest of the croppers, should you decide that their property was damaged by fumes from the defendant's fertilizer plant."

Charges 2 and 3 were properly refused, because the evidence tended to show that the plaintiff, individually, cultivated some land on both sides of the railroad.

Charges 4, 5, and 6 each asserted correct propositions of law, and each was applicable to the evidence in this case. Their refusal must work a reversal of this cause.

While this was an action to recover damages to plaintiff's leasehold interest in the lands described in the complaint, yet it appears indisputably that the amount of those damages was ascertained by computing the amount of crops the land would have made, and their value, but for the wrongs complained of. This injury should have been limited, as the charges sought to do, by allowing the plaintiff to recover as for the value of the crops, or for that part thereof, which she would have received, but for the wrongs she complained of. She was not entitled to recover in this action as for the value of the crops, or of the part thereof, which her tenants in common would have received, but only for the part which she would have received.

(4) The trial court, in its oral charge, said in part as follows: "There are two kinds of agreements in reference to share croppers: One is where one party furnishes the land and the other furnishes the team and labor, and in that case they are to all intents and purposes tenants in common of the crop."

"But where one party furnishes the land and furnishes the team, and the other party furnishes the labor to cultivate the land, the law says that the agreement is that of laborer and hirer."

This part of the oral charge practically follows the law as stated in sections 4742 and 4743 of the Code of 1907. It is true that there was evidence to show that each party furnished one-half of the fertilizer, and which would take the case without the statutes and make the parties tenants in common of the crop; yet the court did not state this phase of the evidence, nor did the court charge the jury that the relation of tenants in common

did not exist in this case, as to any part of the land or the crop. If it should be said that this part of the charge was abstract, this would not be reversible error.

. Reversed and remanded.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ.. concur.