LIPSCOMB v. SOUTH BOUND R. R. CO.

1. EVIDENCE—TRAMWAY—CABLE—DAMAGES—NEGLIGENCE.—Under the allegations of complaint here it was competent to admit evidence showing that the new tramway erected by defendant for plaintiff was defective, in that it was more destructive to cables.

2. IBID.—DAMAGES—BRICK YARD.—RENTAL VALUE is competent to go to the jury to be used by them in estimating damages sustained by owner of brick yard in being deprived of use of it.

3. IBID.—NEGLIGENCE—AGENT.—A report made by an agent of the railroad to its officers is competent to show the condition of a piece of work performed by the company under contract.

Before ALDRICH, J., summer term, 1902, Richland. Affirmed.

Action by Thos. J. Lipscomb against South Bound Rail-

road Company. From judgment for plaintiff, defendant appeals on following exceptions:

"1. Because, contrary to the objection of the defendant, the plaintiff was allowed to testify as a witness that the new tramway constructed by defendant had been more destructive to cables used by him in drawing cars up the same than was the old tramway, no allegation to that effect appearing in the complaint.

"2. Because his Honor, the presiding Judge, refused, upon motion of the defendant, to strike out the testimony of the plaintiff as a witness to the effect that the new tramway wore out his cables.

"3. Because, against the objection of the defendant, the plaintiff was allowed to introduce in evidence the report of T. A. Rice, dated Columbia, S. C., April 13, 1900, addressed to Wm. H. Lyles, Esq., attorney for the defendant corporation, when the same was made by the said T. A. Rice as an employee of the defendant corporation for the information of the defendant corporation alone.

"4. Because, contrary to the objection of the defendant, the plaintiff was allowed to testify as to the supposed rental value of the brick-yard and plant, when it was not alleged in the complaint that he had intended to rent the same or was deprived of the proceeds of the rental thereof.

"5. Because, contrary to the objection of the defendant, plaintiff, as a witness, was allowed to testify to the rental value of the brick-yard and plant, when he showed that his estimate was based solely upon the estimated production of said plant, and estimated profits that might be made from the sale of the brick produced thereby.

"6. Because, against the objection of the defendant, the plaintiff, as a witness, was allowed to testify to the estimated production of said plant, to the cost of the production of the brick, and the selling price thereof as a means of ascertaining the supposed rental value of said brick-yard and plant.

"7. Because, contrary to the objection of the defendant, the plaintiff, as a witness, was allowed to testify as to the

demand for brick during the spring of the year 1900 as a means of ascertaining the rental value of said brick-yard and plant.

"8. Because, against the objection of the defendant, plaintiff, as a witness, was allowed to testify, as a means of establishing the rental value thereof, that the output of the brick plant for the months of March, April and May, 1900, could have been readily sold.

"9. Because the witness, Hasell Green, against the objection of the defendant, was allowed to testify, in response to the question, 'How did the cables last on the old tramway as compared with the new tramway?' when the complaint contained no allegation with reference thereto.

"10. Because, against the objection of the defendant, the witness, T. J. Lipscomb, Jr., was allowed to testify in response to the question, 'You know the expenses of making brick; you know the delays that have to occur, and everything of that kind; taking into consideration that, what do you say would be the rental value per month of that brick plant, including all connected with it, mules and everything of that kind?' the same being an improper method of ascertaining the rental value thereof.

"11. Because his Honor charged the jury as follows, to wit: 'He would be entitled to the use of the premises during the time in which he was deprived of it, as alleged in the complaint, which is alleged to be sixty days. I have let in the testimony as to the rental value as testimony which might go to the jury to aid them in estimating what would be the value of the use of the premises for sixty days, if they should find that the defendant is entitled to the use for sixty days and had been deprived of the use sixty days, as alleged in the complaint,' when it is submitted that it was not the proper measure of damages for a breach of the contract alleged in the complaint, (a) in that it permitted the jury to find the rental value of the entire brick-yard and premises for the period stated; and (b) in that it allowed the jury to find the said rental value for said period, contrary to the written

demand of the plaintiff, that unless finished by the 26th day of March, 1900, he would claim damages from said period.

"12. Because his Honor charged the jury as follows, to wit: 'If you find that the rent of the place or the use of the place is so much to him, that is, you will allow him for the use of it and then you will allow him also for any actual expense he was put to, whether it be for rental of part of the premises of the land or not; you ascertain the value of the use of it to him, as charged in this complaint, if he is entitled to damages for being deprived of the use of the plant;' (a) in that he thereby indicated to the jury that although they could not find the rental value of said premises, they could find the value of the use and occupation thereof in the said plaintiff; and (b) in that it indicated that they could, in addition to the value of the use and occupation thereof, find for the plaintiff such actual expenses as he was put to, whether it was for the rental value of part of the premises or not.

"13. Because his Honor charged as follows, to wit: 'Now, in regard to horses, mules, etc., the law is that if as an immediate result of the breach of this contract during the time of sixty days, as alleged, he was obliged to feed the mules, as charged here, that they were idle and that it was the result of the defendant's breach of the contract, then you will allow that in addition to the value of the use of the premises of which he has been deprived, and also if he had laborers or servants in his employment during the time he was deprived of it, if he was deprived of it, and illegally deprived of it, and compelled to pay them their wages, then the defendant would be liable to him in that respect for the damages;' in that his Honor thereby indicated that it was competent for the jury to give, in addition to the value of the use and occupation of the entire premises, the cost of feeding the mules of plaintiff and the wages of hands employed.

"14. Because his Honor refused defendant's first request to charge, as follows, to wit: 'That where one party has

contracted to erect a trestle for another sufficient for his purposes for two years, and has erected a trestle which is claimed to be sufficient, and the trestle is shown to have stood for the two years, the law presumes that it was sufficient in all respects until the contrary is shown.'

"15. Because his Honor, the presiding Judge, modified defendant's seventh request to charge, as follows, to wit: 'That where a plaintiff sues a defendant for damages for the non-erection, or delay in the erection, of a tramway which the defendant has agreed to erect for plaintiff's use in connection with his brick-yard, the rental value of the brick-yard will only be considered as an element of damages where the plaintiff intended to rent same, and could have rented same but for the delay in the erection of such tramway, and only then when it shows that the defendant had notice at the time of the contract, or within a reasonable time before opportunity to rent, of such intention and opportunity,' by adding, 'Well, gentlemen, that request I charge you with some modification.   It is true, the complaint here does not allege in specific terms, or any other terms, that the plaintiff intended to rent this brick plant, and, therefore, the giving of rent for the place as rent *per se,* not being asked, you cannot give it to him as rent.   I have ruled that the testimony here was competent to go to the jury for whatever the jury might consider it entitled to, to show the value, the use of the premises for the time of which the plaintiff was deprived, if he was deprived, and illegally deprived, of the use of the premises.   In other respects, that is substantially correct;' thereby indicating that although the jury could not find the rental value as such, it was competent for them to find the value of the use and occupation under the same circumstances.

"16. Because, at the close of his Honor's charge, in response to a remark addressed to him by Mr. Nelson, plaintiff's attorney, as follows, to wit: 'I understood your Honor intended to convey the idea to the jury that the testimony was competent to establish what the use of the place was

worth to the plaintiff during the time he was deprived of it, if he was deprived of it? his Honor said: 'Yes, sir, that is what I mean to say. You will compensate him in that respect, gentlemen, if you find he is entitled to compensation in that respect,' thereby indicating that it was competent for the jury to give the value of the use and occupation of said premises for the time when the plaintiff was deprived of the use thereof, and thereby indicating an opinion as to the weight and competency of the testimony.

"17. Because, by his Honor's charge, taken as a whole, while his Honor indicated that the jury could not give to the plaintiff the profits that he might have made out of the operation of his brick-yard for the time he was deprived of the use thereof as such, or the rental value thereof as such, during said time, that they could find the value of the use and occupation thereof, and could base their estimate of the value of such use and occupation upon the testimony, showing the possible profits that might have been made out of the operation of said brick-yard during said period, which this defendant submits was practically the same thing as allowing them to find as damages the supposed profits that might have been made by the plaintiff by the operation of said brick-yard during said period."

*Mr. Wm. H. Lyles,* for appellant, cites: *Profits resulting from manufacturing, and elements which make them up, are too remote in estimating damages:* 41 S. E. R., 938. *Rental damages are not a proper measure of damages:* Harris' Damages, vol. I., 333-4; 1 Strob., 548; 8 Ency., 605. *Damages that might have been avoided by reasonable diligence cannot be regarded as the natural and probable result of defendant's acts:* 34 Fla., 64; 111 Ill., 489; 28 Ia., 254; 1 Suth. on Dam., 238; 1 Sedg. on Dam., sec. 127, 153; 55 Vt., 371; 5 Kan., 118; 112 Ala., 437. *Loss of estimated profits and custom are too remote:* 25 S. C., 68; 9 Exch., 341; 60 S. C., 254; 51 S. C., 480; 57 S. C., 189; 139 U. S., 147; 8 Ency., 2 ed., 616, 617, 618, 619.

*Messrs. P. H. Nelson* and *G. T. Graham,* contra, cite: *Evidence as to new tramway wearing out cables competent under allegations in complaint:* 24 S. E., 992; 31 S. E., 212; 9 S. E., 934; 1 Suth. Dam., 763; 4 S. Ct., 85. *Profits on daily output of brick was not too remote to estimate damages of plaintiff:* 36 S. E., 703; 153 U. S., 540; 58 N. W., 477; 13 So., 51; 39 S. W., 986; 2 Mo. App., 1743; 82 F., 685; 37 P., 49; 50 N. W., 896; 16 S. W., 1101.

January 26, 1903. The opinion of the Court was delivered by

JUDGE WATTS, *acting Associate Justice.* The above entitled action was commenced on the 11th day of August, 1900, and was tried by his Honor, Judge Aldrich, at the summer term of Court for Richland County and a verdict was rendered in favor of plaintiff for $1,800. The complaint alleges in substance: that during the month of October, 1899, and for some years prior thereto, the plaintiff was the owner of the Congaree Brick Works, together with a tramway, cars, cable and other appurtenances, which were used for the purpose of conveying clay from the plaintiff's clay bed into the mill house, where the clay was crushed, ground up and made into brick. During the month of October, 1899, the defendant being anxious to construct its track through and across plaintiff's said tramway, solemnly covenanted and agreed with plaintiff, that if he would allow it to take up and renew his said tramway, and allow it to construct its railroad through and across it, that it would take up said tramway at the end of said brick season, to wit: about the first of November thereafter, and construct for him a good, safe and secure tramway, from his mill-house to his clay bed, and would construct said tramway out of good material and put it in first class condition; that it would elevate said tramway so that trains could pass under it, and would add on to plaintiff's mill-house so that the machinery could be raised to correspond with said tramway, and would fix the machinery to correspond with it so that

said brick works could be easily operated with the same number of laborers and the cost of operating it would not be increased, and that it would have said tramway completed by the commencement of the brick season, to wit: in February, 1900. Having entered into the foregoing agreement, the defendant took up and removed plaintiff's tramway about the first of November, 1899, but made no attempt to erect the new tramway until about the middle of April, 1900, and did not complete it until in May, during all of which time plaintiff had insisted upon the erection of said tramway, telling the defendant that he was being greatly injured in consequence of it, and that he would hold it responsible for the output of said brick works. The tramway constructed by the defendant was defective, unsafe and insecure, and not the kind of tramway that it had agreed to erect for the plaintiff. For more than sixty days the plaintiff was deprived of the use of his brick works; had to pay his rent, his laborers, and feed his mules, etc., which was all occasioned by defendant's breach of contract. The daily output of plaintiff's brick works was 30,000, and the value of the brick was $6.50 per 1,000. Defendant denied the material allegations of the complaint. After the case was tried, defendant appealed, and alleges error on part of Circuit Judge in seventeen exceptions.

We do not propose to take up these exceptions seriatim, for, as I take it, the seventeen exceptions only raise three questions, to wit: Because his Honor, the Judge, allowed testimony to be introduced as to whether the new tramway was more destructive to cables in drawing cars than the old, and how did the cables last on the old tramway as compared to the new. Under the allegations of the complaint, his Honor committed no error in admitting the testimony and doing as he did, submitting the whole question to the jury as to whether or not the cables were a part of the tramway.

It is alleged in several exceptions that his Honor erred in allowing testimony to go to the jury as to the rental value

of the brick-yard during the time the plaintiff alleges he was wrongfully deprived of the use of it by the defendant's act. We see no error in this, for his Honor, in ruling upon the testimony, said he let it in, that it "Might go to the jury to aid them in ascertaining what would be the value of the use of the premises for sixty days, if they should find that the plaintiff is entitled to the use for sixty days, and has been deprived of the use sixty days, as alleged in the complaint;" and his Honor, in his charge to the jury along this line, told them, in speaking of the defendant's seventh request to charge this: "I have ruled that the testimony here was competent to go to the jury for whatever the jury might consider it entitled to, to show the value, the use of the premises, for the time of which the plaintiff was deprived, if he was deprived, and illegally deprived, of the use of the premises." For certainly, if the plaintiff was kept out of his premises for sixty days, or any other length of time, in estimating his damage the rental value for that time would be competent evidence to be considered by the jury in arriving at the amount of damage sustained by him.

As to admitting in evidence the report of T. A. Rice, the testimony clearly shows that Mr. Rice was the agent of the defendant and acting as such when he made the report, and we see no error there.

I have carefully read over the whole case and exceptions and can see no error on the part of his Honor, the Circuit Judge.

It is, therefore, the judgment of this Court that the judgment of the Circuit Court be affirmed.

JUDGE WATTS *sat in place of* JUSTICE POPE, *disqualified.*