SMALLING v. JACKSON et al,

(Supreme Court, Appellate Division, Second Department. June 4, 1909.)

1. APPEAL AND ERROR (§ 221*)—QUESTIONS FOR REVIEW.

Whether a certain measure of damages in an action of trespass is the correct one need not be decided on appeal, where counsel for the defendant make no objection to the evidence in support of such measure and recognize such measure as applicable to the case.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1353–1368; Dec. Dig. § 221.*]

2. TRESPASS (§ 56*)—EXEMPLARY DAMAGES—GROUNDS.

In an action for trespass for taking up fishing nets belonging to plaintiff and carrying them away, in the face of plaintiff's presence and protests, without any justification, punitive damages may be awarded.

[Ed. Note.—For other cases, see Trespass, Cent. Dig. § 144; Dec. Dig. § 56.*]

3. DAMAGES (§ 6*)—NATURE IN GENERAL—CERTAINTY AS TO AMOUNT.

The fact that the estimation of damages caused by a tort or breach of contract is difficult is no reason for denying damages.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 5; Dec. Dig. § 6.*]

Burr and Rich, JJ., dissenting.

Appeal from Suffolk County Court.

Action by Joshua H. Smalling against Harry N. Jackson and others. Judgment for plaintiff, and defendants appeal. Affirmed.

Argued before HIRSCHBERG, P. J., and GAYNOR. BURR, RICH, and MILLER, JJ.

Asa A. Spear, for appellants.
William G. Nicoll, for respondent.

GAYNOR, J. The defendants took up 34 fishing nets which the plaintiff had set in the Great South Bay, and carried them away. This is an action for damages for the trespass, and not merely for the conversion of the nets. The plaintiff claimed the right to recover for damage done to his business by loss of profits, and sought to show the same by a comparison of the size of his catch and the cash receipts therefor during five days before the seizure with those afterwards with the nets that remained, about 70. The case was tried by distinguished counsel, but no objection was made to this evidence, and when it was in no motion was made to confine the damages to a nominal sum. Indeed, the said measure of damages seems to have been the correct one (Egan v. Browne, 128 App. Div. 184, 112 N. Y. Supp. 689), though we do not need to decide that, since counsel recognized it as applicable to the case. This method of ascertaining the damage is more or less loose and uncertain in a case like this, it is true, as wind and weather have to do with the run of fish. But the defendants showed the conditions of wind and weather, so that the basis of comparison was approximated to accuracy, which is about all that can be done in most cases, and the case was submitted to the Justice of the Peace to do the best he could with it. He gave judg-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ment for $200. That the estimation of the damages caused by a tort or breach of contract is difficult is no reason for denying damages. Wakeman v. Wheeler & Wilson Co., 101 N. Y. 205, 4 N. E. 264, 54 Am. Rep. 676. The justice no doubt had difficulty with the evidence as to the actual damages, but even though he had been unable to see more than nominal damage, the case was nevertheless one for punitive damages, for the act of the defendants in seizing and carrying away the nets in the face of the plaintiff's presence and protests was reckless and highhanded. 12 Am. & Eng. Ency. of Law, p. 18; Voltz v. Blackmar, 64 N. Y. 444. They had not the slightest justification or reason for it. They claimed to have acted for the town officials, who had forbidden any one not a resident of the town to fish in the said waters. But the plaintiff was a resident of the town, and well known as such. He was put in the disfavored class of non-residents or outlanders because he hired his nets of non-residents. The case was of that class which always has excited just indignation in courts and juries, and been visited with their condemnation by means of smart money. To borrow the words of an eminent common-law judge (Cowen, J.), applicable in a fair degree to the present case:

"The damages are undoubtedly large, $750. But it is impossible for us to pronounce that they are so disproportionate as, under the circumstances of the case, to indicate corruption or unreasonable passion in the jury. That the jury should have been somewhat transported with indignation by the view which we think they had a right to take of this matter, is highly probable; a consequence which the defendants could hardly escape, were we to send the cause down and order it retried. It must still be tried by men, and by civilized men." Bump v. Betts, 23 Wend. 85.

The judgment should be affirmed.

Judgment of the County Court of Suffolk county affirmed, with costs. HIRSCHBERG, P. J., and MILLER, J., concur. BURR, J., reads for reversal. RICH, J., reads for modification.

BURR, J. (dissenting). The plaintiff was a resident of the town of Babylon. On Ocober 15, 1907, he hired from Philander Swezey and Ernest Swezey certain fishing nets belonging to them, together with their services as fishermen from the said 15th day of October until the 1st day of December, 1907, for which he agreed to pay them $400. The Swezeys were not residents of Babylon. On the 16th day of November the defendants forcibly took up some of these nets which had been set and were being used for fishing purposes, and deprived plaintiff of the use of them for the remainder of the term for which they had been hired. On the 23d of November the plaintiff began an action before a justice of the peace of the town to recover damages by reason of the acts of the defendants alleged to be unlawful, and recovered a judgment for $200, which on appeal was affirmed by the County Court. The defendants now bring the case by appeal to this court.

The fact of interference with the nets in question by the defendants is not denied. They seek to show, however, that in so doing they acted as agents of the town, that the place from which the nets were removed was within the waters of the town, that the town officers

had prohibited all persons other than residents of the town from fishing in its waters, and that the agreement between plaintiff and the Swezeys was a mere colorable one to enable the latter to fish in such waters in violation of said prohibition. Upon the trial of the action the defendants offered evidence as to the town's title to the property where the nets were placed, which was the basis of the action of the town authorities. This evidence was excluded at the objection of the plaintiff, and this is one of the grounds of error urged upon this appeal.

It seems important in the first instance to determine the character of the plaintiff's right to the possession of these nets and to use them for fishing purposes; for, if this is unquestionable, then no injury resulted, even though such evidence were improperly excluded. If plaintiff had the right of possession, and was using the nets for his own business, then, conceding that the claim of the town was well founded, the defendants had no right to interfere with such possession or use, for he was a resident of the town. The contract between the plaintiff and the Swezeys was sufficient to confer upon him an exclusive right to the use of these nets during the period of hiring. The relation between them lacked the essential elements of a partnership; for there was no community of interest in the property itself, nor in the profits resulting from the use thereof, nor any mutual liability for losses. Plaintiff was obligated to pay the Swezeys $400 in installments during the period of hiring, whether the enterprise proved profitable or otherwise. If the profits should far exceed the expectation of the parties, the entire sum over and above what the plaintiff agreed to pay for the use of the articles and for their services belonged to him, and they could claim no part thereof. If the plaintiff desired, he could take these nets and lock them up in a storehouse, and not use them for fishing purposes, and the defendants could not complain if they received the stipulated hire. The entire risk and the entire benefit of the enterprise belonged to the plaintiff alone.

Nor is it any answer to his claim to say that the purpose and object of the contract was to enable the Swezeys to make their nets profitable by the use thereof in waters in which they themselves were prohibited from fishing on their own account. If it be conceded, which we do not decide, that the town of Babylon had the right to limit fishing in the waters of the Great South Bay adjacent to its shores to residents of the town, there was nothing which required the person carrying on fishing upon his own account to employ none but residents of the town to assist him, nor to hire the necessary utensils from residents of the town only. The acts of hiring other persons than such residents and other property than that owned by such residents not being forbidden, the fact that indirectly a nonresident may have been benefited by such an agreement as was made would not render it illegal. Hoyt v. Cross, 108 N. Y. 76, 14 N. E. 801. In this case the court say:

"It may be said that if the plaintiff can maintain this action he has successfully evaded the statute. * * * But it is frequently true that statutes enacted for the public welfare may be successfully evaded without any violation of them."

Possession of personal property with a special right in it is sufficient to maintain an action for conversion, although the·general ownership and title may be in another. Dillenback v. Jerome, 7 Cow. 294; Simon v. Simon, 38 App. Div. 85, 55 N. Y. Supp. 915; Blanck v. Nelson, 39 App. Div. 21, 56 N. Y. Supp. 867. We think, therefore, that the plaintiff can maintain this action, and that no prejudicial error was committed in excluding the evidence upon which the town of Babylon based a claim to bar other than residents thereof from fishing privileges.

The only remaining question is as to the measure of damages. As a general rule, in an action for conversion, the plaintiff is entitled to recover as against a stranger to·the title the value of the property converted; and this is so even when he has only a special or limited interest therein. M. & T. Bank v. F. & M. Nat. Bank, 60 N. Y. 40; Einstein v. Dunn, 61 App. Div. 195, 70 N. Y. Supp. 520, affirmed 171 N. Y. 648, 63 N. E. 1116. After satisfying his own claim or interest therein, he is a trustee for the general owner as to the surplus. Marsden v. Cornell, 62 N: Y. 215. No evidence was given in this case of damages within this general rule; but plaintiff sought to recover the prospective profits which he thinks that he might have made if his possession of the nets had not been interfered with. This evidence, which was received without objection as to its competency or materiality, was too vague, speculative, and indefinite to sustain the judgment. It appeared that the entire number of nets hired was 105. On the 16th of November the defendants removed 34 of them. The plaintiff showed that for the five days preceding that date the total amount of sales of fish was $175.64, or $35.13 a day. For the period succeeding November 16th it only averaged $5.41 per day, a difference of nearly $30 a day. But as only 34 out of 105 nets were removed, and as it does not appear that there was any difference in the size or character of the nets, it would be impossible to assume that the whole of the loss was chargeable to defendants' acts. If each net were supposed to earn an equal amount, as the total earnings of 71 nets after November 16th for the remainder of the term of hiring was $92.76, or about $1.31 a net, the total loss from the 34 nets taken away could not exceed $45. But it appears that after November 16th there were some days between that and the 1st of ·December when it was too stormy to fish at all, and the court may take judicial notice that even on pleasant days "fishermen's luck" does not always run the same.

There is no evidence that the defendants were actuated by any personal ill will toward the plaintiff, nor that their conduct was grossly negligent or oppressive. They proceeded under a mistaken notion as to their duty. Under such circumstances punitive damages may not be allowed. 1 Joyce on Damages, § 127. Beyond that, it affirmatively appears that the justice intended only to allow compensatory damages.

The judgment of the County Court of Suffolk county, and of the justice of the peace, should be reversed, and a new trial ordered; costs to abide the event.

RICH, J. I am unable to concur in the conclusion that the case presented by this record is one justifying punitive damages. Voltz

v. Blackmar, 64 N. Y. 440, cited by Mr. Justice GAYNOR in support of his conclusion, recognizes the well-settled law of this state that in this class of cases "the defendant is entitled to the benefit of any circumstances tending to show that he acted under an honest belief that he was justified in doing the act complained of," and within that rule the case at bar discloses no foundation for punitive damages. The defendant Arnold was a constable of the town of Babylon, who had been instructed by the supervisor of that town to remove the nets from the waters of the bay and to employ the necessary help for that purpose. Under these instructions he employed his codefendants. There is no evidence of personal ill will on the part of either defendant towards the plaintiff, and nothing to characterize their acts as malicious. The nets were owned by a nonresident, who had been notified, prior to their removal, by the defendant Jackson, to stop fishing in the bay, to which notice no attention was paid, as Swezey admits. The fact that the nets were leased to, and being used by, the plaintiff, a resident of the town, was not known to the defendants until plaintiff told them as they were taking up the last one of the 34 nets removed, and none were disturbed after this information was given. I do not think their conduct in removing the nets before the plaintiff reached the scene and forbade further action on their part, or their retention of the nets taken up for a reasonable time to enable them to report to the town authorities and verify the claims of the plaintiff, was so grossly negligent or oppressive as to remove the case from the usual rule of compensatory damages.

I think, upon reflection, however, that the judgment is excessive, and should be modified to compensatory damages. Swezey testifies that when they went to the bay they took 107 nets, and that thereafter they brought up either 19 or 20 more, which would make 126 or 127 nets in use at the time of the acts complained of. On November 16th 34 were taken by the defendants, leaving 92, which the plaintiff continued to use. There is no evidence in the record that the quantity of fish taken from the 34 nets while in use was greater than that taken from a like number of the other nets; no evidence that the water in which the nets taken were set was better for fishing purposes than that occupied by the nets not disturbed; no evidence that the water in which the nets taken were set was not utilized after their removal by setting therein an equal number of the remaining nets; and there is evidence, given by both the plaintiff and his witness Swezey, tending to show that the fishing was poorer, and not prosecuted as diligently, after November 16th, as before. There is nothing in the record warranting the conclusion that the nets were not equal revenue producers, and they should be so regarded. If the nets taken had a greater earning capacity than those not disturbed, the plaintiff should have proved that fact. In the absence of such evidence, the presumption that each net possessed the same earning power must obtain and form the basis of a proper award of damages. For the 17 days following the taking of the nets, before the expiration of the contract upon which the plaintiff's rights are predicated, the 92 nets in use yielded an average daily revenue of .052, which, for the 34 nets taken, would amount, per day, to $1.768, and for the 17 days in which plain-

tiff had the right to use them to $30.05, to which amount his recovery should be limited.

I therefore vote to modify the judgment by reducing the recovery to $30.05, and, as so modified, to affirm, with costs.