[Civil No. 2924. Filed February 18, 1931.]

[296 Pac. 262.]

UNITED VERDE EXTENSION MINING COMPANY, a Corporation, Appellant, v. JOHN F. RALSTON and ELMA E. RALSTON, His Wife, Appellees.

Messrs. Cornick & Crable, for Appellant.

Messrs. O'Sullivan & Morgan and Mr. Louis H. Bunte, for Appellees.

McALISTER, C. J.—This action was instituted in December, 1927, by John F. Ralston and Elma E. Ralston, his wife, to recover of the United Verde Extension Mining Company damages for the loss of crops and the rental value of certain lands, and from a judgment in their favor entered upon the verdict of a jury the defendant appeals.

The plaintiffs are the owners of 160 acres of land situated on the Verde River about nine miles southeast of a smelter operated by defendant and during 1926 and 1927 and for many years prior thereto were engaged in farming and stock-raising and in connection therewith cultivating or leasing for cultivation about forty-five acres of said land. It appears that in 1926 they planted to corn, melons, onions, beets, etc., twenty-three acres of this land and properly irrigated and cared for the same, but that throughout the year, particularly the growing season thereof and the period when the crops were approaching maturity and exceeded in value $1,300, the defendant dis-

charged daily from its smelter near the town of Clemenceau, Yavapai county, Arizona, into the pure air and atmosphere immense quantities of noxious gas, fumes and smoke containing great quantities of sulphur and other poisonous ingredients which were carried by the wind currents to and deposited upon the premises above described and which so poisoned and injured the plants and crops growing thereon as to render them valueless. .

It is alleged as a second cause of action that during 1927 the plaintiffs could have farmed or rented this land at a net profit of $800 had it not been that the defendant's smelter was discharging said gas and smoke which would have poisoned and destroyed any crops planted thereon and that in consequence of this they were prevented in 1927 from either farming or leasing for this purpose said lands, and hence they lost all income from farming operations thereon.

It is alleged as a third cause of action that during 1926 and 1927 and for many years prior thereto plaintiffs pastured about 200 head of cattle on that portion of the land above mentioned not devoted to farming and other lands adjacent thereto held by them under lease or permit from the United States; that these lands were sufficient in extent and quality to pasture and feed such stock the year around had it not been that the poisonous gas and smoke which the defendant's smelter discharged so damaged the grasses, herbage and foliage growing thereon that they became unfit for food for livestock and so reduced the productiveness of said land for pasturage purposes that they would not sustain 200 head of cattle, and that in consequence thereof plaintiffs were forced to feed from 50 to 70 head of said stock during the winters of 1926 and 1927 at a loss of one thousand dollars.

The complaint contains eight other counts but each of them is for damages which, it is alleged, the gas and smoke from defendant's smelter caused some other land owner along the Verde River to suffer in 1926 and 1927, the claim for which was assigned to plaintiffs. Four of these counts, however, were dismissed by the court, and the case heard on the remaining five. The jury returned a verdict for plaintiffs on each count and it is the judgment rendered thereon that the defendant seeks by this appeal to reverse.

Numerous errors are assigned and several of them contain various subheads, but all of these are discussed by defendant under five or six propositions of law. It is first urged that there was a misjoinder of causes of action and parties plaintiff in that the action by plaintiffs is for injuries alleged to have been suffered by them, while the others are for injuries to their assignors. Each of these counts covers separate and distinct property and neither the plaintiffs nor their assignors had any interest whatever either in any of the land described in the complaint except their own or the damages suffered by anyone else other than themselves. Hence, no one of them could have been joined as individual plaintiffs with John F. Ralston and Elma E. Ralston. Bancroft's Code Pleading, par. 142, p. 257; *Creer et al.* v. *Bancroft Land & Irrigation Co.,* 13 Idaho 407, 90 Pac. 228; *St. Louis & S. F. R. Co.* v. *Dickerson,* 29 Okl. 386, 118 Pac. 140. But this does not mean, as the defendant contends, that the plaintiffs as assignees of separate causes of action growing out of damage to the lands of their assignors, all of the same character and against the same defendant, cannot, upon the theory that they are suing in a dual capacity, that is, individually and as trustees of the assignors be joined in the same complaint with themselves as individuals.

If it did, the contention would be sound, for plaintiffs cannot sue in one count as representatives and in another in their personal character. Pomeroy's Code Remedies, 5th ed., par. 603, p. 978; *Morton* v. *Western Union Tel. Co.*, 130 N. C. 299, 41 S. E. 484. But they are suing as assignees of the causes of action described in counts 2 to 9 inclusive, and, therefore, as the legal owners thereof, not as representatives of their assignors, and this makes them the real parties in interest on these counts and renders the joining of such counts and their individual cause of action in the one complaint proper. And even though there was at the time of the assignment a contemporaneous collateral agreement that the assignees were to account to the assignors for the entire proceeds of the claims assigned and sued on there would still be no misjoinder of either plaintiffs or causes of action. Pomeroy's Code Remedies, par. 70, p. 106. This is in accord with paragraph 3727, Revised Code of 1928, and the decisions of this court holding that the assignee of a chose in action may bring suit thereon. See *Mosher* v. *Bellas*, 33 Ariz. 147, 264 Pac. 468; *Leon* v. *Citizens' Building & Loan Assn.*, 14 Ariz. 294, Ann. Cas. 1914D 1151, 127 Pac. 721. And the failure to make the assignors plaintiffs did not, as argued, constitute a nonjoinder of parties, because an assignee may bring suit on an assigned claim in his own name. *Deatsch* v. *Fairfield*, 27 Ariz. 387, 38 A. L. R. 651, 233 Pac. 887; *Sroufe* v. *Soto Bros. & Co.*, 5 Ariz. 10, 43 Pac. 221.

The defendant contends that the causes of action alleging damages to the property of others are not assignable, and hence, that the assignees cannot maintain actions thereon. This court held in *Deatsch* v. *Fairfield, supra*, that whether a chose in action is assignable is determined by the question of survivorship and there can be no doubt but that the action for

damages which accrued to each of the assignors would survive, for, under section 3725, Revised Code of 1928, "actions . . . for any right attached, or growing out of" lands "or for any injury or damage done thereto" may be instituted by an executor or administrator, the same as they could by his testator or intestate. The Circuit Court of Appeals for the Ninth Circuit had before it this identical question in *United Verde Copper Co.* v. *Jordan,* 14 Fed. (2d) 299, 301, and in disposing of it used the following language, which is a correct statement of the law:

"The next inquiry is whether plaintiffs, as assignees, could recover under the counts alleging damages to the properties of others. We think they could. In *Deatsch* v. *Fairfield,* 27 Ariz. 387, 38 A. L. R. 651, 233 Pac. 887, the court said that the question of survivorship of a chose in action is the test of assignability. Under paragraph 398, Arizona Civil Code, suits for recovery of damages or for any injury or damage done to lands may be instituted by executors, administrators, or guardians in like manner as they could have been by their testators or intestates. Paragraph 968, p. 447, Arizona Civil Code, provides that executors or administrators may maintain action for trespass committed on real estate of the decedent in his lifetime. Our opinion is that by the statutes of the state a cause of action which arises from a tort to real property or injuries to a decedent's estate, by which the value of the estate is lessened, survives, and that the general rule that such cause of action is capable of assignment obtains. 2 R. C. L. 613; *Ingersoll* v. *Gourley,* 72 Wash. 462, 130 Pac. 743; *Bultman* v. *Atlantic Coast R. Co.,* 103 S. C. 512, 88 S. E. 279."

The sufficiency of the complaint, and particularly of the counts based on the assigned claims and of the second cause of action in the first count, to constitute causes of action against the defendant is attacked. In the first cause of action of the first count plaintiffs

aver that they are the owners of lands situated about nine miles southeast of defendant's smelter and that during 1926 this smelter discharged large quantities of poisonous gas and smoke which the wind currents carried to these lands and deposited upon them and that they (the gas and smoke) so poisoned and injured the crops growing thereon as to render them (crops) valueless. The theory upon which the complaint is based is that the operation of the smelter in so far as it affects the lands in question, is a nuisance *per se,* but notwithstanding this the right to observance of due care, precaution and vigilance would have averted the damage. Operating a smelter is a perfectly lawful business and necessarily not a nuisance *per se,* but notwithstanding this the right to operate one, like the right to pursue any legitimate course of action, must be exercised in the light of the maxim, "So use your own property as not to injure the rights of another." *Bohan* v. *Port Jervis Gas-Light Co.,* 122 N. Y. 18, 9 L. R. A. 711, 25 N. E. 246. A business may be perfectly legitimate in itself and yet constitute a nuisance as to persons who are specially injured by it. *Arizona Copper Co.* v. *Gillespie,* 230 U. S. 46, 57 L. Ed. 1384, 33 Sup. Ct. Rep. 1004. So, the operation of a smelter, in itself entirely lawful, becomes a nuisance if it discharges into the air poisonous gas and smoke which are carried by the wind currents over and upon the premises described in the complaint and occasion damage thereto. *United Verde Copper Co.* v. *Ralston et ux.,* 46 Fed. (2d) 1, just decided by the Circuit Court of Appeals for the Ninth Circuit; *United Verde Copper Co.* v. *Jordan, supra; Courtney* v. *American Zinc, Lead & Smelting Co.,* 104 Kan. 362, 179 Pac. 342; *Helms* v. *Eastern Kansas Oil Co.,* 102 Kan. 164, L. R. A. 1918C 227, 169 Pac. 208; *Bigbee Fertilizer Co.* v. *Scott,* 3 Ala. App. 333, 56 South. 834, 837; *Wichers* v. *New*

*Orleans Acid & Fertilizer Co.,* 128 La. 1011, 55 South. 657; *Ingmundson* v. *Midland Continental R. R.,* 42 N. D. 455, 6 A. L. R. 714, 173 N. W. 752. And it is immaterial where the smelter is located if it discharges the poisonous fumes at a point from whence .they are taken by the processes of nature to the premises injured by them.

However, in the counts particularly objected to no allegation of injury to crops is found, but there is one stating that the gas and smoke from the smelter would have poisoned, injured and destroyed any crops that might have been planted thereon and that in consequence of this the owners thereof were prevented from either farming or leasing them; that these ''wrongful and unlawful acts of defendant'' damaged and injured the owners thereof in the sum of —— dollars, which was the reasonable. rental value for said lands during these two years. These counts do not, the defendant contends in support of its demurrer, allege any damage suffered by the plaintiffs or their assignors or any caused by the defendant because it affirmatively appears therefrom that neither the plaintiffs nor their assignors planted any crops or made an effort to farm in 1926 or 1927, and, hence, the gas and smoke deposited on these lands during this period could not have done any damage thereto. In other words, there were no crops planted and attempted to be grown which could have been damaged and the gas and smoke did no injury to the land itself. This is clearly untenable because the owners were not required, as a condition precedent to the right to recover damages for being deprived of the use of their lands, to go through the expense of planting and attempting to grow crops thereon if their effort was foredoomed to failure as a result of the gas and smoke from the defendant's smelter, and the effect of these fumes on the crops was a mat-

ter susceptible of proof. "The plaintiff, after the trespass," says the court in *Reisert* v. *City of New York,* 174 N. Y. 196, 66 N. E. 731, 735, "would not be justified in efforts, year after year, to raise crops upon this damaged land, or portions thereof, if experience had demonstrated that they would not mature and produce a marketable or profitable article." In fact, an unsuccessful attempt to farm would only increase the damage.

Neither did the rule which imposes upon one the duty of exercising reasonable care and diligence to render the injury as light as possible require plaintiffs or their assignors to make an effort to farm, upon the theory that they might have succeeded partially, if not completely, and thus have minimized the damage. This rule has no application where the injury can be prevented only by extraordinary cost or effort, or not at all, or in cases of nuisance or of positive and continuous torts. *Price* v. *High Shoals Mfg. Co.,* 132 Ga. 246, 22 L. R. A. (N. S.) 684, 64 S. E. 87; *Reisert* v. *City of New York, supra; Paddock* v. *Somes,* 102 Mo. 226, 10 L. R. A. 254, 14 S. W. 746; *Niagara Oil Co.* v. *Ogle,* 177 Ind. 292, Ann. Cas. 1914D 67, 42 L. R. A. (N. S.) 714, 98 N. E. 60. In *American Smelting & Refining Co.* v. *Riverside Dairy & Stock Farm,* (C. C. A.) 236 Fed. 510, 514, the court quotes approvingly the following language from Wood on Nuisances:

"A person injured by a nuisance is not precluded from a recovery by the fact that he might, by small exertion and a small expenditure, have prevented the injury; the rule being that, as it was the defendant's duty to abstain from the creation of the nuisance, and having created it, adjoining owners are not bound to guard against the consequences ensuing therefrom, when in order to do so they are required to expend time or money. . . . A party is not bound to expend a dollar, or to do any act to secure for him-

self the exercise or enjoyment of a legal right of which he is deprived by reason of the wrongful acts of another."

The owners, being prevented by the poisonous fumes from either farming or leasing their lands in 1926 and 1927, were entitled to the fair rental or usable value thereof for these years. 17 C. J. 883; *Eno* v. *Christ,* 25 Misc. Rep. 24, 54 N. Y. Supp. 400; *Ewing et ux.* v. *City of Louisville,* 140 Ky. 726, 31 L. R. A. (N. S.) 612, 131 S. W. 1016; *Ponca Refining Co.* v. *Smith,* 73 Okl. 6, 174 Pac. 268; *Lipscomb* v. *South Bend R. Co.,* 65 S. C. 148, 43 S. E. 388; *Baltimore etc. R. R. Co.* v. *Boyd,* 67 Md. 32, 7 Am. St. Rep. 362, 10 Atl. 315; *Barclay* v. *Grove,* 9 Sadler 153, 11 Atl. 888. In Sedgwick on Damages, ninth edition, section 184, is found this language:

"Where an owner of land is wrongfully prevented from occupying it, the measure of his damages is the value of the use of the land—that is, its rental value. So where the plaintiff's farming land was wrongfully overflowed by the defendant, the measure of damages is the use of the land, not the value of the crops that might have been raised on it."

The plaintiffs and their assignors were, under the allegations of the complaint, just as effectively prevented by the fumes from occupying and enjoying their lands as though they had been overflowed by water or otherwise. The gas and smoke did not evict them, it is true, but did deprive them of the beneficial use thereof and nothing further was required because the manner in which this use was interfered with, whether by fumes, water or otherwise, was immaterial. The fact that it resulted from the carrying on of a perfectly lawful business in the most approved way made no difference. The land owners were deprived of their legal right to farm unmolested by the poisonous fumes none the less by the fact that the

discharge thereof was a necessary incident to a business of this character.

The next assignment challenges the sufficiency of the evidence to substantiate the allegations that plaintiffs' crops were seriously damaged in 1926 by the fumes and that any crops they in 1927, or their assignors in 1926 or 1927, might have planted and attempted to grow would have been so seriously damaged thereby as to render an effort to raise them useless and the leasing of said land impossible. Upon this ground, among others, the defendant moved at the close of the evidence for an instructed verdict but the court permitted the case to go to the jury and it found for the plaintiffs on the five counts submitted in the sum of $3,552.50, divided as follows: $1,552.50 on the first count, $200 on the second, $400 on the fourth, $200 on the fifth, and $1,200 on the sixth. The denial of this motion was correct for while there was some conflict in the evidence that in support of the verdict was sufficient to sustain it. A large number of witnesses familiar with conditions in the middle Verde country and frequent observers of the effect of the smoke on the vegetation and crops in that locality, testified regarding its action at different times, and various plants which had been affected by it, not only in 1926 and 1927, but in other years, were introduced as exhibits. The effect of sulphur dioxide ($S O_2$), the element in the smoke that causes the principal damage to crops, was explained by a chemist who had made extensive investigations of the smoke situation in the middle Verde country. The evidence discloses that the smoke from the smelter was carried by the wind currents a good portion of the time, especially in the summer months, down the Verde Valley in a southeasterly direction, sometimes as far as twelve miles before it is deposited upon the ground, and that in 1926 and 1927 that dis-

charged contained each year about 100,000 tons of sulphur dioxide; that the smelter has been in operation since the latter part of 1918, except the year 1921, and that the effects of the gas and fumes discharged by it began to be observed soon thereafter by the plaintiffs and other farmers along the Verde and have been observed each year since except 1921. It would serve no useful purpose to discuss the evidence in detail, because it is clear from it that the jury was justified in concluding that the crops the plaintiffs attempted to grow in 1926 were so seriously damaged by the smoke as to be of very little if any value and that any they or their assignors might have made an effort to grow in 1926 or 1927 would have been damaged substantially to the same extent. The efforts to farm on the middle Verde between 1919 and 1926 justified this conclusion, and, such being true, the land owners were not required to make useless attempts in that direction before their right to damage arose. *Reisert* v. *City of New York, supra.*

Complaint is made of the admission of certain evidence, but it is not necessary to discuss each of the assignments based thereon. The plaintiff, John F. Ralston, was asked to state what efforts he had made to rent his land between 1920 and 1926, and the witness, Mack Davis, whether he had made any profit out of his farming operations during these years, and the defendant objected to both questions upon the ground that there was no allegation of an effort to farm in those years and that the cause of action averring loss by reason of inability to rent did not contain sufficient facts. There was no error in overruling these objections because the plaintiffs were seeking to recover on certain counts damages suffered in 1926 and 1927 upon the theory that the owners were prevented by the fumes from either farming the lands themselves or leasing them for this purpose

during this period, and it is clear that the fact, if it were a fact, that they were unable to do either in previous years because of the injurious effect of the smoke would have been a potent factor in determining whether they could have done so in 1926 and 1927. That they were not seeking damages for those years did not prevent its being admissible as evidence, for when it was once shown that the smoke produced certain results the presumption would be that it would continue to do so.

The witness, H. L. Brisley, was permitted, over the objections of plaintiffs, to testify that on approximately 137 farms in the Verde Valley beween the smelter and Camp Verde crops of alfalfa, corn, melons and garden vegetables were being produced with varying degrees of success, the extent thereof depending upon the ability of the individual farmer, and on cross-examination he was asked if it were not true that a number of these farmers had filed suits against the defendant for damages on account of the smoke injury. The defendant objected upon the ground that it was neither proper cross-examination nor the best evidence, but this was overruled and we think properly so. The purpose of the question was to elicit facts modifying or contradicting the statement that 137 farm owners, presumably in the same situation as plaintiffs and their assignors, were not being injured by the smoke, and inasmuch as its tendency was in that direction the rule respecting cross-examination was not violated in permitting it to be answered. 2 Nichols, Applied Evidence, par. 229, pp. 1566, 1567. Neither did it transgress the best evidence rule, since there was no effort to go further than bring out the general statement that a number of these owners had filed suit. If more definite information regarding any of these actions had

been relevant and an effort made to introduce it the record itself would doubtless have been required.

The last proposition urged is that the court committed error in giving certain instructions and withholding others requested by the defendant. A careful reading of the seventeen refused in connection with the full charge discloses that they were either contained in substance in the latter or based upon theories of the law of the case which the trial court did not entertain and the foregoing views do not approve. The only ones discussed fully in the brief, however, numbers 10 and 11, and requiring consideration here, deal with the rule which should guide a jury in assessing damages when those suffered result from separate causes and the evidence does not show what proportion thereof is attributable to each. The proof under such facts, it asserts, is too uncertain to permit the jury arbitrarily to apportion all or even a part of the damages proved to the acts for which defendant is responsible. This, together with a further instruction applying the rule to the facts of this case was requested because the testimony disclosed, first, that a part of the smoke alleged to have produced the injuries complained of came from the smelter of the United Verde Copper Company located about four miles away from defendant's, and intermingled with that from the latter from whence it was carried to the lands in question, and, second, that bugs, insects, plant diseases, frosts, improper cultivation, poor soil, and a lack of irrigation water affected the crop yields of the farmers along the Verde.

If there had been nothing in the record from which the jury could have determined what proportion of the damage was caused by the smoke from defendant's smelter the instruction could have been properly given, but such was not the case because it appeared from the evidence that while the United Verde Copper

Company's smelter discharged several times as much sulphur dioxide as the defendant's it was four miles farther away from the lands of the plaintiffs and their assignors than the latter's; that the first diffusion of the gases is rapid as the smoke is in a heated condition when it comes from the stack; that no extensive injury to crops in the middle Verde occurred from the smoke prior to the latter part of 1918 when defendant's smelter began operations although the United Verde Copper Company's smelter had been running some years at that time; and that the smoke from defendant's smelter ordinarily reached the surface of the earth near the farms in question. While these factors may not be all that could be desired they were sufficient to enable the jury to determine with the certainty the law requires under such circumstances what portion of the damage was caused by the smoke from defendant's smelter. " 'It is enough,' " says *Bigbee Fertilizer Co. v. Scott, supra,* " 'if the evidence furnishes data for an approximate estimate of the amount of damage. 3 Sutherland on Damages, 3d ed., § 704; 13 Cyc. 37.' Certainly a tortfeasor should not be permitted to escape liability, because the court may find difficulty in declaring a perfect measure for the damages which have been suffered by reason of the tort." *Smalling v. Jackson,* 133 App. Div. 382, 117 N. Y. Supp. 268. It is clear, therefore, that the court was right in refusing the instruction as submitted, though the subject was properly covered in other instructions. In fact, a careful reading of the whole charge discloses that the jury was fully and correctly advised as to the law of the case.

Finding no prejudicial error in the record the judgment is affirmed.

ROSS and LOCKWOOD, JJ., concur.